UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANCAK DAVARCI, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>　　　　Defendant | CIV. A. NO. _____ |

**CLASS ACTION COMPLAINT**

**I.　　INTRODUCTION**

　　　　1.　　Uber is a car service, which engages thousands of drivers across the state of New York who can be hailed and dispatched through a mobile phone application to transport riders. Uber is based in San Francisco, California, and it does business across the United States, including extensively throughout New York.

　　　　2.　　As described further below, Uber has misclassified its drivers, including Plaintiff Sancak Davarci, as independent contractors when they should be classified under New York law as employees. Based on the drivers' misclassification as independent contractors, Uber has unlawfully required drivers to pay business expenses (including but not limited to the cost of maintaining their vehicles, gas, insurance, phone and data expenses, and other costs) in violation of New York Labor Law, Article 19, §§ 193 and 198-b. Uber has also failed to guarantee and pay its drivers

minimum wage for all hours worked and it has failed to pay overtime premiums for hours worked in excess of forty hours per week in violation of NYLL Article 6 §§ 190 *et seq.*, Article 19 §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

3. Plaintiff brings these claims on behalf of himself and all other similarly situated pursuant to Fed. R. Civ. P. 23.  He seeks recovery of damages for himself and the class, as well as declaratory and injunctive relief, requiring Uber to reclassify its drivers as employees in New York.

## II. PARTIES

4. Plaintiff Sancak Davarci is an adult resident of West Hempstead, New York, where he has worked as an Uber driver since 2013.

5. The above-named plaintiff has brought this action on his own behalf and on behalf of all others similarly situated, namely all other individuals who have worked as Uber drivers in New York.

6. Defendant Uber Technologies, Inc. ("Uber") is a Delaware corporation headquartered in San Francisco, California.

## III. JURISDICTION

7. This Court has jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since Uber is a California citizen, incorporated in Delaware and the putative plaintiff class reside primarily in New York; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.  The putative class, including Plaintiff Davarci, have worked throughout the state of New York, including in New York City.

IV.     **STATEMENT OF FACTS**

8. Uber is a San Francisco-based car service that provides transportation service in cities throughout the country, including in New York, via an on-demand dispatch system.

9. Uber offers customers the ability to hail a car service driver on a mobile phone application.

10. Uber's website has advertised that "Uber is your on-demand private driver."

11. Although classified as independent contractors, Uber drivers are employees under New York law.

12. Uber requires its drivers to abide by a litany of policies and rules designed to control the drivers' work performance.  Uber retains the right to terminate drivers at any time in its discretion. Uber may terminate a driver if the driver behaves in a way that Uber believes is inappropriate or has violated one of Uber's rules or standards. Drivers are also subject to termination based on Uber's system of using customer rating feedback; drivers can be terminated in Uber's discretion if Uber deems their customer ratings to be inadequate.

13. Drivers perform a service in the usual course of Uber's business, since Uber is a car service that provides transportation to its customers, and drivers such as Plaintiff perform that transportation service.  Uber holds itself out as a transportation service, and it generates its revenue primarily from customers paying for the very rides that its drivers perform.  Without drivers to provide rides for Uber's customers, Uber would not exist.

14. When driving for Uber, Uber drivers are not engaged in their own transportation business. Instead, when driving Uber customers, drivers wear the "hat" of Uber. Customers cannot request specific Uber drivers; instead, Uber assigns particular rides to drivers.

15. Uber does not require drivers to possess any skill above and beyond that necessary to obtain a normal driver's license.

16. Drivers' tenure with Uber is for an indefinite amount of time.

17. Uber provides the drivers with the primary instrumentality with which they can perform services for Uber because Uber only derives a benefit from the drivers' labor when they use Uber's software.

18. Uber sets the rate of pay for drivers' services and changes the rate of pay in its sole discretion. If a rider does not pay, it is Uber—not drivers—who bear the loss.

19. At times, Uber has deducted money from drivers' fares to cover the cost of an Uber-issued iPhone, which drivers use to run Uber's software and accept ride requests. At other times, drivers have been required to provide, and pay for, their own phones.

20. Uber tracks drivers' location in real time through the Uber app and provides customers with an estimated time of arrival.

21. If a driver can no longer carry out a ride after accepting the job, Uber, rather than the driver, finds a replacement.

22. Drivers must undergo background checks as a prerequisite to driving for Uber.

23. Drivers' vehicles must meet Uber's quality standards, which it determines and may change at any time at its sole discretion.

24. Uber monitors drivers' performance and may suspend or terminate drivers who do not maintain high customer satisfaction ratings or who engage in other conduct that Uber may determine constitutes grounds for suspension or termination.

25. Uber drivers are engaged in interstate commerce. At times, drivers transport passengers across state lines. Furthermore, drivers are engaged in interstate commerce as they routinely transport passengers who are within the flow of interstate commerce, traveling to or from destinations out of state, including arriving at or leaving train stations, bus stations, and airports.

26. Uber does not reimburse drivers for any necessary expenses they incur while working for Uber, including, but not limited to the cost of maintaining their vehicles, gas, insurance (all of which can be reasonably estimated based upon the IRS vehicle reimbursement rate), as well as phone and data expenses for running the Uber application. Drivers incur these costs as a necessary expenditure to work for Uber, and their payment of these costs are effectively improper deductions from the drivers' wages. See NYLL, Article 19, § 193 (3)(a) ("No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages….").

27. Uber has violated NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations by failing to assure that drivers make the applicable minimum wage for all hours worked, particularly after accounting for their expenses and other deductions taken from their pay (and also not counting tips

they receive). The hours that drivers such as Mr. Davarci have work include hours spent transporting passengers, driving to pick up passengers, and driving between rides while awaiting the next ride.

28. Uber has also violated NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations by failing to pay its drivers the appropriate overtime premium of time-and-a-half their regular rate of pay for all overtime hours worked beyond forty per week. Mr. Davarci has worked more than forty hours per week at various times since he began driving for Uber and was never paid the appropriate premium for hours worked beyond forty per week. The hours that drivers such as Mr. Davarci have worked include hours spent transporting passengers, driving to pick up passengers, and driving between rides while awaiting the next ride.

## V.     CLASS ACTION ALLEGATIONS

29. The class representative, Plaintiff Davarci, has brought this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Uber drivers who have worked for Uber in New York.

30. The class representative and other class members have uniformly been misclassified as independent contractors.

31. The members of the class are so numerous that joinder of all class members is impracticable.

32. Common questions of law and fact regarding Uber's conduct exist as to all members of the class and predominate over any questions affecting solely any individual members of the class. Among the questions of law and fact common to the class are:

    a. Whether class members have been required to work under Uber's direction and control;

    b. Whether the work performed by class members—providing transportation service to customers—is within Uber's usual course of business, and whether such service is fully integrated into Uber's business;

    c. Whether class members are engaged in an independently established business or occupation while they are transporting Uber customers;

    d. Whether class members have been required to bear the expenses of their employment, such as expenses for their vehicles, gas, smart phone, and other expenses;

33. The class representative is a member of the class, who suffered damages as a result of Uber's conduct and actions alleged herein.

34. The class representative's claims are typical of the claims of the class and he has the same interests as the other members of the class.

35. The class representative will fairly and adequately represent and protect the interests of the class.  The class representative has retained able counsel experienced in class action litigation and particularly in the allegations included here.  The interests of the class representative are coincident with, and not antagonistic to, the interests of the other class members.

36. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

37. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical.  Moreover, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them.  The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### Failure to Reimburse Expenses

As set forth above, Uber has misclassified its drivers in New York as independent contractors, in violation of NYLL, Article 6 §§ 190 *et seq.*, NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations. As a result of this misclassification, drivers have improperly been required to bear the expenses of their employment (such as expenses for maintaining or leasing their vehicles, insurance, gas, phone data charges, and other expenses), in violation of NYLL, Article 19, §§ 193 and 198-b, and the supporting New York State Department of Labor Regulations.

## COUNT II

### Failure to Pay Minimum Wage

By failing to ensure that Uber drivers receive the full New York minimum wage for all hours worked, Uber has violated NYLL, Article 19, §§ 650, *et seq.*, and the

supporting New York State Department of Labor Regulations.

### COUNT III

### Failure to Pay Overtime

By failing to pay Uber drivers time-and-a-half for all hours worked in excess of forty per week, Uber has violated NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

WHEREFORE, Plaintiff requests that the Court enter the following relief:

a. A declaratory judgment that the Plaintiff and class members are employees, not independent contractors, under New York state law;

b. Injunctive relief ordering Uber to comply with New York law;

c. Certification of a class pursuant to Fed. R. Civ. P. 23;

d. An order requiring Uber to provide a complete and accurate accounting of all the wages and reimbursement of expenses to which Plaintiff and members of the class are entitled;

e. An award of damages for all wages, reimbursement of expenses, and liquidated damages that are due to Plaintiff and members of the class because of their misclassification as independent contractors under New York law;

f. An award of prejudgment interest pursuant to CPLR § 5001(a);

g. Attorneys' fees and costs; and

h. Such further relief as the Court deems just and proper.

Dated: November 3, 2020                    Respectfully submitted,

                                           SANCAK DAVARCI, individually
                                           and on behalf of all others similarly situated,

                                           By his attorneys,

                                           _/s/ Shannon Liss-Riordan_____
                                           Shannon Liss-Riordan, NY Bar No. 2971927
                                           Anne Kramer, *pro hac vice* anticipated
                                           LICHTEN & LISS-RIORDAN, P.C.
                                           729 Boylston Street, Suite 2000
                                           Boston, MA 02116
                                           (617) 994-5800
                                           Email:  sliss@llrlaw.com, akramer@llrlaw.com