UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANCAK DAVARCI and JOSEPH
CHAMBERS, *individually and on
behalf of all others similarly situated*,

              Plaintiffs,

       v.

UBER TECHNOLOGIES, INC,

              Defendant.

---

Civil Action No.: 20-CV-9224 (VEC)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
COMPEL INDIVIDUAL ARBITRATION, STRIKE PLAINTIFFS' CLASS
ALLEGATIONS AND STAY THE ACTION**

Andrew M. Spurchise
Sean A. Malley
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022

*Attorneys for Defendant*

TABLE OF CONTENTS

PAGE

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   STATEMENT OF FACTS ......................................................................... 1

      A.    The Uber Apps Connect Drivers With Riders ................................. 1

      B.    Plaintiffs Agreed To Arbitrate Their Claims Against Uber.................................. 2

III.  THE COURT SHOULD ORDER PLAINTIFFS TO ARBITRATE THEIR
      CLAIMS ON AN INDIVIDUAL BASIS ........................................................... 6

      A.    The FAA Applies To The Arbitration Provision ................................... 6

      B.    Plaintiffs Are Personal Passenger-Transportation Providers And Are Not
            Exempt From The FAA ........................................................... 8

            1.    Personal Passenger-Transportation Workers Do Not Engage In
                  Interstate Commerce Within The Meaning Of Section 1 ......................... 9

            2.    The 2020 PAA Is Not A Contract of Employment................................. 13

            3.    Personal Passenger-Transportation Workers Do Not Transport
                  Goods ........................................................................ 13

      C.    The Class Action Waiver Is Valid And Enforceable And Plaintiffs' Class
            Allegations Should Be Stricken ................................................... 15

      D.    The Parties Unmistakably Reserved All Other Issues For Arbitration............... 17

      E.    The Arbitration Provision Covers This Dispute ................................... 19

            1.    There Is A Valid Agreement to Arbitrate ................................. 19

            2.    Plaintiffs' Claims Fall Squarely Within the Scope of the
                  Arbitration Provision ................................................... 20

IV.   CONCLUSION.................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)................................................................................................13

*Am. Int'l Specialty Lines Ins. Co. v. AlliedCapital Corp.*,
    35 N.Y.3d 64 (2020) .............................................................................................15

*American Express Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013)................................................................................................16

*AT&T Mobility, LLC v. Concepcion*,
    563 U.S. 333 (2011)........................................................................................6, 7, 16

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)................................................................................................17

*Brown v. St. Paul Travelers Cos.*,
    559 F. Supp. 2d 288 (W.D.N.Y. 2008) ..................................................................19

*Bruster v. Uber Techs., Inc.*,
    188 F. Supp. 3d 658 (N.D. Ohio 2016)..................................................................18

*Buck v. California*,
    343 U.S. 99 (1952)..................................................................................................11

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)..................................................................................................6

*Camilo v. Uber Techs., Inc.*,
    2018 U.S. Dist. LEXIS 91456 (S.D.N.Y. May 31, 2018)......................................17

*Capriole v. Uber Techs., Inc.*,
    460 F. Supp. 3d 919 (N.D. Cal. 2020) ......................................................10, 11, 12

*Carey v. Uber Techs., Inc.*,
    2017 WL 1133936 (N.D. Ohio Mar. 27, 2017) .....................................................18

*Cavallo v. Uber Techs., Inc.*,
    2017 WL 2362851 (D.N.J. May 31, 2017) ............................................................18

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001)..................................................................................8, 9, 13, 14

i

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .................................................................................................7

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
58 F. 3d 16 (2d Cir. 1995) ....................................................................................20

*Congdon v. Uber Techs., Inc.*,
226 F. Supp. 3d 983 (N.D. Cal. 2016) ................................................................18

*DirectTV, Inc. v. Imburgia*,
136 S. Ct. 463 (2015) .............................................................................................7

*Eastus v. ISS Facility Services, Inc.*,
2020 WL 2745545 ...............................................................................................14

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ......................................................................................17, 19

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ..........................................................................................7, 13

*Grice v. United States Dist. Court*,
974 F.3d 950 (9th Cir. 2020) (denying petition for mandamus and holding that
drivers who use the Uber Driver App are not exempt under Section 1 of the
FAA) .....................................................................................................................12

*Guan v. Uber Techs., Inc.*,
236 F. Supp. 3d 711 (E.D.N.Y. 2017) ................................................................18

*Gunn v. Uber Techs., Inc.*,
2017 WL 386816 (S.D. Ind. Jan. 27, 2017)........................................................18

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008) ...............................................................................................6

*Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*,
702 F.3d 954 (7th Cir. 2012) ...............................................................................14

*JetBlue Airways Corp. v. Stephenson*,
88 A.D.3d 567 (1st Dept. 2011)...........................................................................14

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014) .............................................................................20

*Jones v. Giles*,
741 F.2d 245 (9th Cir. 1984) ...............................................................................11

*Kowalewski v. Samandarov*,
    590 F. Supp. 2d 477 (S.D.N.Y. 2008)................................................................14

*Lamour v. Uber Techs., Inc.*,
    2017 WL 878712 (S.D. Fla. Mar. 1, 2017)........................................................18

*Lathan v. Uber Techs., Inc.*,
    266 F. Supp. 3d 1170 (E.D. Wis. 2017)............................................................18

*Lee v. Uber Techs., Inc.*,
    208 F. Supp. 3d 886 (N.D. Ill. 2016)................................................................18

*Marc v. Uber Techs., Inc.*,
    2016 WL 7210886 (M.D. Fla. Dec. 13, 2016)..................................................18

*Marmet Health Care Center, Inc. v. Brown*,
    132 S.Ct. 1201 (2012)......................................................................................17

*Mastrobuono v. Shearson Lehman Hutton*,
    514 U.S. 52 (1995)........................................................................................7, 15

*McIntosh v. Uber Techs., Inc.*,
    No. 17 C 3273 (N.D. Ill. Jan. 24, 2018)...........................................................19

*Michalski v. Circuit City Stores, Inc.*,
    177 F.3d 634 (7th Cir. 1999)............................................................................20

*Micheletti v. Uber Techs., Inc.*,
    213 F. Supp. 3d 839 (W.D. Tex. 2016).............................................................18

*Morris v. Ernst & Young, LLP*,
    834 F.3d 975 (9th Cir. 2016)............................................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..........................................................................................7, 20

*Mumin v. Uber Technologies, Inc.*,
    239 F. Supp. 3d 507 (E.D.N.Y. 2017)............................................................4, 18

*New Prime Inc. v. Oliveira*,
    139 S.Ct. 532 (2019)....................................................................................13, 15

*O'Connor v. Uber Techs.*,
    904 F.3d 1087 (9th Cir. 2018)..........................................................................15

*Olivares v. Uber Techs., Inc.*,
    2017 WL 3008278 (N.D. Ill. July 14, 2017)....................................................18

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003) ................................................................................................17, 19

*Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..........................................................................18

*Perry v. Thomas*,
    482 U.S. 483 (1987) ......................................................................................................7

*Price v. Uber Techs., Inc.*,
    2017 WL 2378280 (S.D. Ind. June 1, 2017) ..............................................................18

*Richemond v. Uber Techs., Inc.*,
    263 F. Supp. 3d 1312 (S.D. Fla. 2017) ......................................................................18

*Rimel v. Uber Techs., Inc.*,
    246 F. Supp. 3d 1317 (M.D. Fla. 2017) ....................................................................18

*Rogers v. Lyft, Inc.*,
    452 F. Supp. 3d 904 (N.D. Cal. 2020) ..................................................................10, 12

*Scroggins v. Uber Techs., Inc.*,
    2017 WL 373299 (S.D. Ind. Jan. 26, 2017) ..............................................................18

*Sena v. Uber Techs., Inc.*,
    2016 WL 1376445 (D. Ariz. Apr. 7, 2016) ...............................................................18

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ........................................................................................................20

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ....................................................................................................15

*Suarez v. Uber Techs., Inc.*,
    688 F. App'x 777 (11th Cir. 2017) .............................................................................18

*Thomas v. Uber Techs., Inc.*,
    1:18-cv-2433-MHC (N.D. Ga. July 19, 2018) ..........................................................18

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ....................................................................................................20

*Varon v. Uber Techs., Inc.*,
    2016 WL 1752835 (D. Md. May 3, 2016) .................................................................18

*Volt Info. Sciences, Inc. v. Bd. of Trustees*,
    489 U.S. 468 (1989) ....................................................................................................15

*Wallace v. Grubhub Holdings, Inc.*,
970 F.3d 798 (7th Cir. 2020) .......................................................................8

*Xue Wen v. Am. Bus. Inst. Corp.*,
2020 N.Y. Misc. LEXIS 2204, 2020 NY Slip Op 31472(U) (Sup. Ct. NY Co.
May 20, 2020) ............................................................................................15

*Zawada v. Uber Techs., Inc.*,
727 Fed. App'x. 839 (6th Cir. Mar. 14, 2018) .......................................18

**Statutes**

9 U.S.C. § 2 .......................................................................................................6, 8

9 U.S.C. § 4 .......................................................................................................15

49 U.S.C. § 13506(a)(2), 31138(e)(2) .................................................................11

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...............................................1, 7

Jones Act, 46 U.S.C. § 30104 *et seq.* ...............................................................11

Motor Carrier Act of 1935 § 203(b), Pub. L. No. 74-255, 49 Stat. 543, 545 ...............11

National Labor Relations Act ............................................................................16

NY Veh. & Tr. Law § 1691, *et seq.* ...................................................................3

NY Veh. & Tr. Law § 1696 ...............................................................................12

Railway Labor Act, 45 U.S.C. § 151 *et seq.* ...................................................11

**Other Authorities**

CPLR § 7501 .....................................................................................................15

https://www1.nyc.gov/assets/tlc/downloads/pdf/rule_book_current_chapter_59.pd
f (last accessed December 9, 2020).............................................................2, 12

New Automobility: Lyft, Uber and the Future of American Cities,
https://tinyurl.com/vo7vzw7 .......................................................................10

SHARON FEIGON & COLIN MURPHY, BROADENING UNDERSTANDING
OF THE INTERPLAY AMONG PUBLIC TRANSIT, SHARED MOBILITY,
AND PERSONAL AUTOMOBILES,https://capitolhillvillage.org/wp-
content/uploads/2018/11/Mobility-and-More.pdf (2018).........................10

TRANSPORTATION STATISTICS ANNUAL REPORT,
https://tinyurl.com/vmkgaah, p. 1–13 .......................................................9

U.S. DEP'T OF TRANSP., 2018 TRANSPORTATION STATISTICS ANNUAL
    REPORT ...................................................................................................................9

## I.      PRELIMINARY STATEMENT

Plaintiffs Sancak Davarci and Joseph Chambers bring this action alleging violation of the New York Labor Law on behalf of themselves and a putative class of purportedly similarly situated individuals. Whatever the merits of their claims, Plaintiffs cannot adjudicate them in this forum and cannot bring their claims on behalf of any others.

Plaintiffs each voluntarily entered into a valid arbitration agreement covering any disputes arising out of their respective relationships with Uber Technologies, Inc. ("Uber").  Under these agreements, Plaintiffs agreed to bring such causes of action solely in arbitration and solely on an individual basis.  Plaintiffs also agreed to delegate to the arbitrator threshold issues related to the enforceability and validity of their arbitration agreements.

Accordingly, Defendant moves, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*,[1] for an order compelling Plaintiffs to submit their claims against Defendant to individual arbitration, striking Plaintiffs' class allegations, and staying this matter pending the completion of arbitration.

## II.     STATEMENT OF FACTS

### A.      The Uber Apps Connect Drivers With Riders

Uber develops proprietary software used to create digital marketplaces that are accessible through app-based platforms (the "Uber Apps"). Through the use of proprietary algorithms, the Uber Apps connect individual consumers in need of goods and services with those willing to provide them. (Declaration of Brad Rosenthal ("Rosenthal Decl.") at ¶¶ 4-5.) The most widely used Uber marketplace connects individuals looking for a ride ("riders") with local, third-party

---

[1] As described below, to the extent necessary, Uber moves under New York State law in the alternative.

independent transportation providers ("drivers") offering their transportation services. (*Id*.)  To access the Rides marketplace, riders download the Uber Rider App onto their smartphones, while drivers download the Uber Driver App.[2] (*Id.* at ¶ 6.)

**B.    Plaintiffs Agreed To Arbitrate Their Claims Against Uber**

On or about December 5, 2014, Davarci first signed up and created an account to use the Uber Driver App to generate leads for potential riders. (*Id.* at ¶ 14.) Chambers first created his account on or about July 18, 2017. (*Id.* at ¶ 20.)

Neither driver could access the Uber Driver App to generate leads for potential riders unless and until they electronically accepted the then-applicable agreement with Uber or one of its affiliates or subsidiaries. (*Id.* at ¶¶ 8-13.) At the time Davarci signed up to use the Uber Driver App, the applicable agreement was the November 10, 2014 Uber Logistik LLC[3] Transportation Company Agreement, which he accepted. (*Id.* at ¶ 14.) Davarci has used the Uber Driver App in New York City, where his for-hire vehicle services are regulated by the New York City Taxi and Limousine Commission ("TLC").[4] (Rosenthal Decl. at ¶¶ 15-16); TLC Rules and Regulations for the FHV Industry, § 59A, *et seq*.[5]

Chambers commenced using the Uber Driver App after accepting the June 17, 2017 Rasier[6] Technology Services Agreement. (*Id.* at ¶ 20.) Chambers, who lives in Buffalo, New York, used the Uber Driver App to provide peer-to-peer transportation services in New York State, outside of

---

[2] "Drivers" is used as shorthand, but it does not describe all transportation providers. Because a transportation provider may engage another worker to driver his or her vehicle, transportation providers do not necessarily drive themselves.

[3] Uber Logistik LLC is a former subsidiary of Uber Technologies, Inc. (Rosenthal Decl. at ¶ 10.)

[4] On or about July 12, 2017, Davarci entered into the Rasier, LLC Technology Services Agreement, also permitting him to provide peer-to-peer ("p2p") transportation services to riders in New York State, outside of New York City.  (*Id*. at ¶ 17.)

[5]   https://www1.nyc.gov/assets/tlc/downloads/pdf/rule_book_current_chapter_59.pdf  (last accessed December 9, 2020).

[6] Rasier-NY, LLC is a wholly owned subsidiary of Uber Technologies, Inc. that operates in New York State. (*Id*. at ¶ 9.)

New York City.  (*Id.* at ¶¶ 9, 11, 20-21.) His transportation services were regulated as a New York State Transportation Network Company ("TNC") driver. (*Id.* at ¶ 17); NY Veh. & Tr. Law § 1691, *et seq*.

On January 8 and 9, 2020 respectively, Davarci and Chambers both accepted the January 6, 2020 Platform Access Agreement ("January 2020 PAA") through the Uber Driver App in order to continue to use the Rides marketplace to generate leads. (*Id.* at ¶¶ 18, 21; **Exs. D-G** to Rosenthal Decl.)

To accept the January 2020 PAA, Plaintiffs first had to sign into the Uber Driver App, where the January 2020 PAA was available for review by clicking a hyperlink presented on the screen. (Rosenthal Decl. at ¶¶ 12-13, 19, 22; **Ex. A**.) Plaintiffs were free to spend as much time as they wished reviewing the January 2020 PAA on their smartphones. (Rosenthal Decl. at ¶¶ 12, 19, 22.) To advance past the screen with the January 2020 PAA hyperlink, and in order to actively use the Uber Driver App, Plaintiffs had to click "YES I AGREE" to the January 2020 PAA presented. (*Id.*) After clicking "YES I AGREE," Plaintiffs were prompted to confirm acceptance a second time. (*Id.* at ¶¶ 12-13, 19, 22; **Ex. B.**) After confirming their acceptance of the January 2020 PAA twice, they could view the January 2020 PAA through their online portal, among other ways.[7] (*Id.* at ¶¶ 13, 19, 22.) The January 2020 PAA contains an arbitration provision (the "Arbitration Provision").[8] (*Id.* at ¶ 23; **Exs. D and F**.) Although they had the right to do so, Plaintiffs did not opt

---

[7] Similar acceptance processes were followed with respect to earlier versions of the agreements accepted by Plaintiffs. (Rosenthal Decl. at ¶ 8.)
[8] Davarci and Chambers each entered into a 2020 PAA that is different in some ways than the other. (*See* **Exs. D and F** to Rosenthal Decl.)  However, the arbitration provision in those two agreements are the same, save for the paragraph numbers. (*Id.*)  Therefore, to simplify this motion, Defendants will cite only to the relevant paragraph numbers of the 2020 PAA that Davarci signed (*i.e.* Exhibit D to the Rosenthal Decl.).

out of that Arbitration Provision.[9] (*Id.*) The Arbitration Provision provides, in relevant part, as follows:

> (a) This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce, and you agree that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the Federal Arbitration Act. If notwithstanding the foregoing, the Federal Arbitration Act does not apply to this Arbitration Provision, the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply. Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates.

> (b) This Arbitration Provision applies to all claims whether brought by you or us, except as provided below. This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial . . . such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision.

> (c) Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and us, or between you and any other entity or individual, arising out of or related to your application for and use of an account to use our Platform and Driver App as a driver . . . the nature of your relationship with us (including, but not limited to, any claim that you are our employee), . . . unfair competition, compensation, minimum wage, expense reimbursement, overtime, breaks and rest periods, . . . Fair Labor Standards Act, . . . federal, state or local statutes or

---

[9] On December 16, 2019, well before he signed the 2020 PAA on January 8, 2020, Davarci emailed Uber a notice expressing his intent to opt out of "the arbitration provision in the Technology Services Agreement updated November 25, 2019." (Rosenthal Decl. at ¶ 25, **Ex. H**.) However, Davarci never signed the November 25, 2019 Technology Services Agreement. (*Id.* ¶ 26.) Furthermore, "arguments that [Davarci] expressed his intent to opt out of a prior arbitral clause before agreeing to the [subsequent] Agreement is irrelevant" to whether arbitration should be compelled because Davarci "intended to delegate questions of arbitrability to an arbitrator, and therefore any challenge to the scope, enforceability, or applicability of the Arbitration Provision is for an arbitrator to resolve in the first instance." *Mumin v. Uber Technologies, Inc.*, 239 F. Supp. 3d 507, 524-25 (E.D.N.Y. 2017).

regulations addressing the same or similar subject matters, and all other federal, state, or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with us or the termination of that relationship.

(**Ex. D** to Rosenthal Decl. at § 14.1.)

The Arbitration Provision also includes the following class waiver:

**Class Action Waiver. This Arbitration Provision affects your ability to participate in class or collective actions**. Both Uber and you agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or for you to participate as a member in any such class or collective proceeding ("Class Action Waiver").

(*Id.*, at § 14.4 (emphasis in original).)

The first line of the Arbitration Provision also includes the following line in bold, explicitly alerting the individual that accepting the agreement will mean arbitrating all disputes on an *individual* basis:

**IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION . . . .**

(*Id.*, at § 14 (emphasis in original).)

Plaintiffs' agreements to arbitrate were voluntary. Plaintiffs were both provided 30 days after acceptance to opt out of the Arbitration Provision, which they could have done by simply sending an email to "optout@uber.com."[10] (*Id.* at § 14.8.) The provision also notified Plaintiffs of their right to consult with an attorney regarding the Arbitration Provision:

---

[10] In fact, as noted in a prior footnote, Davarci not only knew how to opt out of an arbitration agreement with Uber, but actually attempted to do so with a prior agreement that he never accepted.

**Your Right To Opt Out Of This Arbitration Provision**

(a) Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with us. If you do not wish to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision. . . . To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver-partner account to optout@uber.com, stating your intent to opt out . . . .

(b) . . . Should you not opt out of this Arbitration Provision within the 30-day period, you and Uber shall be bound by the terms of this Arbitration Provision….

(*Id.* at § 14.8.)

While numerous drivers have opted out of the Arbitration Provision, Plaintiffs did not do so. (Rosenthal Decl. at ¶¶ 23-24.)

## III. THE COURT SHOULD ORDER PLAINTIFFS TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS

### A. The FAA Applies To The Arbitration Provision

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011) ("*Concepcion*"), the FAA declares a liberal policy favoring the enforcement of arbitration agreements, stating: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress sought to overcome what was then widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 593 (2008); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration").

6

The FAA permits private parties to "trade[] the procedures … of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). It is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To these ends, the FAA not only places arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24); *Concepcion*, 563 U.S. at 344 ("The overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings"); *DirectTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act").

The Arbitration Provision at issue here is indisputably governed by the FAA.  First, the Arbitration Provision so states. (**Ex. D** to Rosenthal Decl. at § 14.1 ("This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.")); *see Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63-64 (1995) (FAA applies even where contract also provides that state law governs); *Imburgia*, 136 S. Ct. at 468-71 (FAA applies even if agreement designates a state choice of law). Second, the agreement containing the Arbitration Provision affects commerce sufficient for the FAA to apply. This requirement is broadly construed, consistent with the full reach of the Commerce Clause, to apply the FAA even if there is no "'specific effect upon interstate commerce if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Citizens Bank v. Alafabco, Inc.*,

539 U.S. 52, 56-57 (2003); *see Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020). Accordingly, the FAA governs in this case.

### B.     Plaintiffs Are Personal Passenger-Transportation Providers And Are Not Exempt From The FAA

In their pleadings, Plaintiffs allege the following:

> Uber drivers are engaged in interstate commerce. At times, drivers transport passengers across state lines. Furthermore, drivers are engaged in interstate commerce as they routinely transport passengers who are within the flow of interstate commerce, traveling to or from destinations out of state, including arriving at or leaving train stations, bus stations, and airports.

(Amended Complaint ("Complaint"), ¶ 26.)

This allegation appears to be an attempt to escape Plaintiffs' obligation to arbitrate by relying on a narrow exemption to the FAA, which excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. However, the exclusionary clause does not apply to personal passenger-transportation providers like Plaintiffs.

The Section 1 exclusionary clause is a narrow exception to Section 2, which makes the FAA broadly applicable to all contracts "involving commerce." *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001). Because Plaintiffs are neither seamen nor railroad employees, they would be exempt only if they are part of a class of "transportation workers" who are "actually engaged" in interstate commerce. *Id.* at 112, 119. As mandated in *Circuit City*, evaluating this question calls for application of the maxim *ejusdem generis*, the statutory canon by which general terms that follow specific terms in a statutory enumeration embrace only similar concepts. *Id.* at 114, 121. Thus, the Court must consider here whether Plaintiffs are part of a class whose work is

of like kind to seamen and railroad workers who operate directly over the instrumentalities of interstate commerce.

> 1.      ***Personal Passenger-Transportation Workers Do Not Engage In Interstate Commerce Within The Meaning Of Section 1.***

Plaintiffs belong to a "class of workers" consisting of "personal passenger-transportation providers." *See* Rosenthal, Decl., ¶ 5 ("[T]he Uber Rides marketplace [] matches individuals in need of local transportation ('riders') with independent transportation providers ('drivers'), who almost always operate locally near their homes."); BUREAU OF TRANSP. STAT., U.S. DEP'T OF TRANSP., 2018 TRANSPORTATION STATISTICS ANNUAL REPORT, https://tinyurl.com/vmkgaah, p. 1–13 (describing the Uber App as "us[ing] an online platform to connect riders to drivers" who predominantly "us[e] their personal vehicles.").

Personal passenger-transportation providers are not "engaged in foreign or interstate commerce" as contemplated in Section 1. The Supreme Court has held that "the linkage [between 'any other class of workers']" and the two specific, enumerated types of workers identified in the preceding portion of the sentence (seamen, railroad workers) is based on "Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods." *Circuit City*, 532 U.S. at 121. Thus, to be exempt, personal passenger-transportation providers must be— as a class—"actually engaged in" interstate commerce in a similar manner to seamen and railroad employees. *Id*. at 112 (emphasis added).

Plaintiffs were not engaged in interstate commerce like seamen or railway workers. Plaintiffs, and other personal passenger-transportation providers, generally provide short trips within a community or metropolitan area. (Declaration of Juan Manuel Contreras ("Contreras Decl.") ¶¶ 4-6); *See, e.g.*, BUREAU OF TRANSP. STAT., U.S. DEP'T OF TRANSP., 2018

TRANSPORTATION STATISTICS ANNUAL REPORT, at 1–13 ("most trips" performed by drivers using ride-sourcing apps "are relatively short within urban core areas").

Trips provided by personal passenger-transportation providers average only a few miles and are generally completed in less than 30 minutes. The New Automobility: Lyft, Uber and the Future of American Cities, https://tinyurl.com/vo7vzw7, at 13, SCHALLER CONSULTING (July 25, 2018) ("trips typically travel 6.1 miles with a duration of 23 minutes" nationwide); SHARON FEIGON & COLIN MURPHY, BROADENING UNDERSTANDING OF THE INTERPLAY AMONG PUBLIC TRANSIT, SHARED MOBILITY, AND PERSONAL AUTOMOBILES,https://capitolhillvillage.org/wp-content/uploads/2018/11/Mobility-and-More.pdf, at 1 (2018) (in five regions, "the mean TNC trip was between 2 and 4 miles.")

These industry-wide trends are consistent with the local transportation service provided by Plaintiffs and other personal passenger-transportation providers using the Uber Driver App. (*See* Rosenthal Decl. ¶ 5; Contreras Decl., ¶¶ 4-6.)  Between 2015 and 2019, the average trip generated through the Uber Driver App covered an average distance of only 0.1 miles and took merely 16.6 minutes to complete. (Contreras Decl., ¶ 4.)[11]  And 97.5 percent of those trips never crossed state lines.[12] (*Id*.) Plaintiffs rarely completed any trips that crossed state lines. (*Id.* ¶¶ 5-6 (Only 0.08% of Chambers's trips, and 5.46% of Davarci's trips, began in a different state from which they ended).)  To the extent any of Plaintiffs' trips happened to cross state lines (e.g., a trip from Manhattan to Newark International Airport), it is mere "happenstance" and a function of Plaintiffs' work in an area near a state border, not an inherent aspect of their jobs.  *See Rogers v. Lyft, Inc*., 452 F. Supp. 3d 904, 916 (N.D. Cal. 2020) (holding that drivers using the Lyft app are not exempt

---

[11] The average distance and duration figures were calculated from statistically representative random samples. (Contreras Decl., n.1.)
[12] Even the trips that did cross state lines remained within a local community, averaging only approximately 13.5 miles and lasting only approximately 30 minutes. (*Id*. ¶ 4.)

under Section 1, and stating that "[i]nterstate trips that occur by happenstance of geography do not alter the intrastate transportation function performed by the class of workers"); *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 932 (N.D. Cal. 2020) (citing statistics produced by Uber and holding that interstate rides provided by drivers using the Uber Driver App are not only "incidental" to interstate commerce but also "rare").

It would have been of no consequence even if Plaintiffs' work was predominately comprised of interstate trips (and it was not). Section 1 focuses on the nature of interstate commerce actually engaged in by classes of workers, not the idiosyncratic travel patterns of any individual driver. 9 U.S.C. § 1; *see Capriole*, 460 F. Supp. 3d at 932 ("Uber drivers do not perform an integral role in a chain of interstate transportation.")

The inherently local transportation services by personal passenger-transportation providers stand in stark contrast to the predominately cross-border transportation provided by railroads and shipping lines, which average hundreds to a thousand miles per trip. Indeed, personal passenger-transportation providers, like taxicabs, have never been regulated federally like seamen and railway workers. *See, e.g.*, Railway Labor Act, 45 U.S.C. § 151 *et seq.*; Jones Act, 46 U.S.C. § 30104 *et seq.*

The Supreme Court affirmed long ago that taxicabs may be regulated by local governments even if they cross state lines because they are "local business[es]" with operations that are "essentially local." *See Buck v. California*, 343 U.S. 99, 102 (1952) (no conflict with federal law "so long as there is no attempt to discriminatorily regulate or directly burden" interstate commerce). And consistently, when Congress did pass legislation regarding motor carriers after the FAA was enacted, Congress specified that "[n]othing in this part . . . shall be construed to include . . . taxicabs, or other motor vehicles performing a bona fide taxicab service . . . on a regular

11

route or between fixed termini." Motor Carrier Act of 1935 § 203(b), Pub. L. No. 74-255, 49 Stat. 543, 545; see 49 U.S.C. § 13506(a)(2), 31138(e)(2) (excluding "taxicab service"); *see also Jones v. Giles*, 741 F.2d 245, 249-250 (9th Cir. 1984) (taxicabs service "is not the sort[] of transportation that require[s] national regulation.").

Similar to taxicabs, drivers who use the Uber Driver App in New York are regulated by state and local, not federal, law, consistent with the inherently local nature of drivers' services. The Rules and Regulations of the New York City Taxi and Limousine Commission heavily regulate the provision of for-hire transportation services within New York City, and strictly prohibit any such activity by any driver not licensed to perform services by the TLC. TLC Rules and Regulations for the FHV Industry, § 59A-11.[13] Likewise, the statewide Transportation Network Company law ("TNC law") provides the regulatory framework for most of the rest of the state, including the area surrounding Buffalo, New York where Chambers operated. As with New York City's TLC law, the TNC law expressly limits pre-arranged, for-hire transportation to vehicles and operators who are licensed for such activity by the State.  *See, e.g.,* NY Veh. & Tr. Law § 1696.

Other courts have examined the specific application of the Section 1 exemption to drivers who used the Uber Driver App, and concluded that such individuals are not as a matter of law exempt from the FAA because they are not "engaged in interstate commerce" within the meaning of Section 1. *Grice v. United States Dist. Court*, 974 F.3d 950 (9th Cir. 2020) (denying petition for mandamus and affirming that drivers who use the Uber Driver App are not exempt under Section 1 of the FAA); *Capriole*, 460 F. Supp. 3d at 932 ("Uber drivers do not perform an integral role in a chain of interstate transportation . . . [and] do not fall within the Section 1 exemption to the

---

[13] https://www1.nyc.gov/assets/tlc/downloads/pdf/rule_book_current_chapter_59.pdf   (last   accessed December 9, 2020).

FAA."); *see also Rogers,* 452 F. Supp. 3d at 916 (drivers using the Lyft App are not, as a class, engaged in interstate commerce).

Personal passenger-transportation providers were never contemplated by Congress as being outside the FAA's reach. Indeed, seamen and railroad employees were exempted from the FAA precisely because they were covered by a different federal regulatory/arbitration regime. *Circuit City*, 532 U.S. at 121 ("Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering [those] specific workers.") To create a large and ill-defined loophole in the FAA that applied to locally-regulated industries would retrench upon the FAA's explicitly broad reach—perversely restricting arbitration by misinterpreting a statute written to expand it. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272–73 (1995).

## 2.    *The 2020 PAA Is Not A Contract of Employment.*

Plaintiffs also may not rely upon the exclusionary clause in Section 1 because the 2020 PAA is not a "contract of employment" at all; it is a license agreement. 9 U.S.C. § 1; *see New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 539-40 (2019) (an agreement that is not an "agreement to perform work" is not a "contract of employment"); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991) (Section 1 not applicable to a securities registration application). Uber does not pay Plaintiffs to provide rides to passengers or to perform any other work. (Rosenthal Decl. ¶ 6.) Rather, the 2020 PAA provides Plaintiffs with a license to use the Uber App to seek, receive and fulfill on-demand requests for transportation services from riders, at the time and place of Plaintiffs' choosing, and only if they choose to do so at all. (**Ex. D** to Rosenthal Decl. at § 1.1(b)) (Drivers are not required to perform any work and they "decide when, where and whether (a) [they] want to offer For-hire Service facilitated by [Uber's] Platform and (b) [they] want to accept, decline, ignore or cancel a Ride . . . request.")

13

### 3.   *Personal Passenger-Transportation Workers Do Not Transport Goods.*

The Section 1 exemption also does not apply because personal passenger-transportation workers transport passengers, not goods. In *Circuit City*, the Supreme Court held that Section 1 reflected "Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods." *Id*. at 121 (emphasis added). The majority of courts addressing this question post-*Circuit City* agree that the Section 1 exemption does not apply to workers who, like Plaintiffs, transport only people. *See, e.g., Eastus v. ISS Facility Services, Inc*., 2020 WL 2745545 at (5th Cir. 2020) (*Circuit City* did not overturn the circuit's precedent and thus, holding, "[w]e stay on course then, to determine if [the plaintiff] was engaged in the movement of goods"); *Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954 (7th Cir. 2012) (applying *Circuit City's* definition of a "class of workers," which must be transportation workers like seamen and railroad employees "that are 'actually engaged in the movement of goods in inter-state commerce'").

In *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477 (S.D.N.Y. 2008), the court rejected the argument of the drivers of a car service who argued that they were exempt under Section 1 because they "drove [] customers between New York, New Jersey, Pennsylvania and Connecticut," *id.* at 481.  Citing *Circuit* City, the *Kowalewski* court held that the plaintiffs were not exempt under Section 1 because they did not move "physical goods" – an "indispensable element to being engaged in commerce in the same way that seamen and railroad workers are." *Id.* at 484; *see JetBlue Airways Corp. v. Stephenson*, 88 A.D.3d 567, 570 (1st Dept. 2011) (declining to apply the Section 1 exemption to airline pilots because they were involved primarily in the transportation of passengers, not goods).

Based on all of the above, the Court should conclude that the exemption in FAA Section 1 does not apply to Plaintiffs because personal passenger-transportation providers are not "engaged

14

in" interstate commerce and certainly, not in the same manner as "railroad employees and seamen."

*Kowalewski*, 590 F. Supp. 2d at 483; 9 U.S.C. § 1.[14]

### C.   The Class Action Waiver Is Valid And Enforceable And Plaintiffs' Class Allegations Should Be Stricken

The Arbitration Provision expressly reserves for the Court the authority to determine the enforceability of the parties' class action waiver. (**Ex. D** to Rosenthal Decl. at § 14.4.) This issue is well-settled: class action waivers in arbitration agreements are enforceable.

The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989); *see Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 53-54 (1995). Because the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement," the Court should enforce the Arbitration Provision as written and order the parties to individual arbitration. *See Mastrobuono*, 514 U.S. at 66; 9 U.S.C. § 4; *see also O'Connor v. Uber Techs.*, 904 F.3d 1087, 1094 (9th Cir. 2018) (enforcing Uber's class waiver).

The Supreme Court has repeatedly upheld the enforcement of class action waivers. The Court held in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662 (2010), that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id*. at 684; *accord Lamps Plus v. Varela*, 139 S. Ct. 1407, 1415-19 (courts may not compel parties to arbitrate in any manner that is "markedly different from . . . traditional individualized arbitration" and that "interferes with [the] fundamental attributes of arbitration"—informality, speed, and cost-efficiency—unless the parties expressly

---

[14] Even if the FAA did not apply, and it clearly does, the Arbitration Provision and the class action waiver are nonetheless fully enforceable under New York law. *See* CPLR § 7501; *Am. Int'l Specialty Lines Ins. Co. v. AlliedCapital Corp.*, 35 N.Y.3d 64, 70 (2020) (reiterating "New York's long and strong public policy favoring arbitration"); *Xue Wen v. Am. Bus. Inst. Corp.*, 2020 N.Y. Misc. LEXIS 2204, 2020 NY Slip Op 31472(U) (Sup. Ct. NY Co. May 20, 2020) (enforcing arbitration provision with a class waiver).

agreed to do so). The Court affirmed the enforceability of class waivers a year later, reiterating that the bedrock principle of the FAA is that arbitration agreements must be enforced as written. *Concepcion,* 563 U.S.at 352.

The enforceability of class action waivers was again echoed by the Court in *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013). There, the Court held that courts "must 'rigorously enforce'" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes." *Id*. at 233 (citations omitted), *see id*. at 236-39 (class waiver enforceable even if the plaintiff's costs of individually arbitrating a claim exceed the potential individual recovery). And most recently, in *Epic Systems v. Lewis,* 138 S. Ct. 1612 (2018), the Court invalidated a rule (the "*Morris* rule") barring class and collective action waivers based on the purported violation of employees' rights under the National Labor Relations Act ("NLRA").  The Court rejected that reasoning, holding that the *Morris* rule ran afoul of the FAA because it was not a defense that "would render any contract unenforceable," but rather, it "attack[ed] (only) the individualized nature of the arbitration proceedings" and "interfere[d] with one of arbitration's fundamental attributes." *Id.* at 1622. The NLRA could not override class waivers because "[i]n the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Id*. at 1619. The Court concluded that its holding is consistent with its prior holding "decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does not displace the Arbitration Act or prohibit individualized arbitration proceedings." *Id*. at 1626.

This Court must follow the above binding precedent and enforce the 2020 PAA as written. The 2020 PAA states, that "[b]oth Uber and you agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others." (**Ex. D** to

Rosenthal Decl. at § 14.4); *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201, 1202–1203 (2012). Thus, Plaintiffs' class claims should be stricken, and Plaintiffs should be compelled to submit individual claims to final and binding arbitration pursuant to the Arbitration Provision and Class Action Waiver. *See, e.g., Camilo v. Uber Techs., Inc.*, 2018 U.S. Dist. LEXIS 91456, at *8 (S.D.N.Y. May 31, 2018) (enforcing Uber's arbitration provision and class waiver, and striking the plaintiff's class allegations).

### D.    The Parties Unmistakably Reserved All Other Issues For Arbitration

Normally, in deciding whether to compel arbitration, a court is charged with determining the two "gateway" issues: whether (1) a valid agreement to arbitrate exists between the parties; and (2) the agreement covers the dispute. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003). However, there is an exception to this general rule where, as here, "the parties clearly and unmistakably provide otherwise." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). In such a case, the court first examines the underlying contract to determine whether the parties agreed to commit questions of enforceability or arbitrability to the arbitrator. If the parties have done so, that agreement must be enforced. *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Here, the Arbitration Provision contains a clear and unmistakable provision delegating all arbitrability questions to arbitration:

> This Arbitration Provision applies to all claims whether brought by you or us, except as provided below. This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial. Except as provided below regarding the Class Action Waiver and Representative Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the formation,

17

> scope, enforceability, waiver, applicability, revocability or validity
> of this Arbitration Provision or any portion of this Arbitration
> Provision.

(**Ex. D** to Rosenthal Decl. at § 14.1(b).)

The delegation clause in Uber's arbitration provisions with drivers has been consistently and repeatedly enforced by federal Circuit Courts and District Courts all over the country, including multiple times by federal judges in New York. *See e.g., Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507 (E.D.N.Y. 2017) (enforcing delegation clause in similar Uber arbitration provision); *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36 (E.D.N.Y. 2017) (same); *Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711 (E.D.N.Y. 2017) (same); *see also Mohamed v. Uber Techs., Inc*, 848 F.3d 1201, 1208-12 (9th Cir. 2016); *Suarez v. Uber Techs., Inc.*, 688 F. App'x 777 (11th Cir. 2017); *Zawada v. Uber Techs., Inc.*, 727 Fed. App'x. 839 (6th Cir. Mar. 14, 2018); *Lathan v. Uber Techs., Inc.*, 266 F. Supp. 3d 1170 (E.D. Wis. 2017); *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983 (N.D. Cal. 2016); *Richemond v. Uber Techs., Inc.*, 263 F. Supp. 3d 1312 (S.D. Fla. 2017); *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317 (M.D. Fla. 2017); *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839 (W.D. Tex. 2016); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886 (N.D. Ill. 2016); *Bruster v. Uber Techs., Inc.*, 188 F. Supp. 3d 658 (N.D. Ohio 2016); *Olivares v. Uber Techs., Inc.*, 2017 WL 3008278 (N.D. Ill. July 14, 2017); *Cavallo v. Uber Techs., Inc.*, 2017 WL 2362851 (D.N.J. May 31, 2017); *Carey v. Uber Techs., Inc.*, 2017 WL 1133936 (N.D. Ohio Mar. 27, 2017); *Lamour v. Uber Techs., Inc.*, 2017 WL 878712 (S.D. Fla. Mar. 1, 2017); *Gunn v. Uber Techs., Inc.*, 2017 WL 386816 (S.D. Ind. Jan. 27, 2017); *Scroggins v. Uber Techs., Inc.*, 2017 WL 373299 (S.D. Ind. Jan. 26, 2017); *Marc v. Uber Techs., Inc.*, 2016 WL 7210886 (M.D. Fla. Dec. 13, 2016); *Varon v. Uber Techs., Inc.*, 2016 WL 1752835 (D. Md. May 3, 2016); *Sena v. Uber Techs., Inc.*, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016); *Price v. Uber Techs., Inc.*, 2017 WL

2378280 (S.D. Ind. June 1, 2017); *Thomas v. Uber Techs., Inc.*, 1:18-cv-2433-MHC (N.D. Ga. July 19, 2018); *McIntosh v. Uber Techs., Inc.*, 2018 U.S. Dist. LEXIS 10989 (N.D. Ill. Jan. 24, 2018).

Because the FAA governs this dispute, the Class Action Waiver is enforceable, and because the Arbitration Provision includes a delegation clause for all other issues, there is no other work for the Court to do but compel arbitration.

### E.     The Arbitration Provision Covers This Dispute

Even assuming the Court decides the gateway issues (which it should not), the result is the same: the FAA requires bilateral arbitration because the Arbitration Provision satisfies the two "gateway issues" identified above.

#### 1.     *There Is A Valid Agreement to Arbitrate.*

"When deciding whether the parties agreed to arbitrate a certain matter," courts generally "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. at 944. Plaintiffs' claims must be referred to arbitration because the Arbitration Provision is a binding agreement under state law principles of contract formation. *Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) ("courts employ 'ordinary principles of contract and agency' in order to determine whether the parties have agreed to arbitrate") (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776-77 (2d Cir. 1995)).

Plaintiffs (i) twice affirmatively acknowledged their intent, after ample opportunity to review, to assent the terms of the 2020 PAA, including the conspicuous Arbitration Provision; and (ii) had 30 days after accepting to review the Arbitration Provision and consider whether to opt-

out, but did not do so.[15]  Accordingly, Plaintiffs' acceptance of the Arbitration Provision was clear and unequivocal, and a valid agreement to arbitrate exists.

### 2.    *Plaintiffs' Claims Fall Squarely Within the Scope of the Arbitration Provision.*

The FAA requires courts to apply a presumption favoring arbitration.  *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  In fact, courts must enforce arbitration agreements "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

This case does not present a close call. When they accepted the 2020 PAA, Plaintiffs specifically agreed to arbitrate "any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries or parent companies . . . and termination of that relationship, and survives after the relationship terminates." (**Ex. D** to Rosenthal Decl. at § 14.1(a).)  The phrase "arising out of or relating to" an underlying agreement is frequently deemed to be the broadest sort of all-encompassing language available. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 7 (1984); *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F. 3d 16, 20 (2d Cir. 1995).  Notably, the Arbitration Provision explicitly includes disputes over "the nature of [Plaintiff's] relationship with [Uber] (including, but not limited to, any claim that [Plaintiffs] are [Uber's] employee)." (**Ex. D** to Rosenthal Decl. at § 14.1(c).)

---

[15] *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-77 (9th Cir. 2014) (individual who is provided the opportunity to opt-out of an arbitration agreement is free not to arbitrate, and, in declining that opportunity, the employee makes the choice to arbitrate his or her potential claims); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (distinguishing mandatory arbitration agreement from one in which individual is free to opt-out).

In addition, the Arbitration Provision expressly applies to any disputes between Plaintiffs and Uber USA, LLC or Rasier-NY, LLC,[16] and any of its fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them. Uber Technologies, Inc. is a corporate parent of Uber USA, LLC and Rasier-NY, LLC, and an intended third-party beneficiary of the Arbitration Provision. (Rosenthal Decl. ¶¶ 9-10, **Ex. D**, at § 14.1, **Ex. F**, at § 13.1.)

Given these considerations, and the strong presumption in favor of arbitration, Plaintiffs' claims, all of which are premised on the theory that Uber misclassified them as independent contractors, unlawfully required them to pay business expenses, and failed to pay minimum wages and overtime, all in purported violation of the NYLL, fall squarely within scope of the Arbitration Provision.  Accordingly, the "gateway" issues under the FAA are met, and Plaintiffs must submit their claims to individual arbitration.

## IV.    CONCLUSION

For all the foregoing reasons, Uber respectfully requests that this Court compel Plaintiffs to arbitrate their claims on an individual basis, strike Plaintiffs' class allegations, and stay the action pending arbitration.

---

[16] Under the 2020 PAA, Davarci contracted with Uber USA, LLC, and Chambers contracted with Rasier-NY, LLC.  (**Exs. D & F** to the Rosenthal Decl.).  Both entities are wholly owned subsidiaries of Uber Technologies, Inc. (Rosenthal Decl. ¶¶ 9-10.)

Date:   December 11, 2020
        New York, New York

                                        */s/ Sean A. Malley*
                                        Andrew M. Spurchise
                                        Sean A. Malley
                                        Littler Mendelson, P.C.
                                        900 Third Avenue 8th Floor
                                        New York, NY 10022
                                        212.583.2691
                                        aspurchise@littler.com
                                        smalley@littler.com

                                        *Attorneys for Defendant*