UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANCAK DAVARCI and JOSEPH CHAMBERS, *individually and on behalf of all others similarly situated*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>UBER TECHNOLOGIES, INC,<br><br>　　　　　　　　　Defendant. | DECLARATION OF BRAD ROSENTHAL IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE PLAINTIFFS' CLASS ALLEGATIONS, AND STAY THE ACTION<br><br>Civil Action No.: 20-CV-9224 (VEC) |

I, Brad Rosenthal, hereby declare and state as follows:

1. I am an adult over the age of 18 and a resident of the state of California. The information set forth herein is true and correct of my own personal knowledge (unless otherwise stated) and if asked to testify thereto, I would do so competently.

2. I am currently employed by Defendant Uber Technologies, Inc. ("Uber") as Director of Strategic Operational Initiatives in which I use my previous experience to create and implement new company initiatives. Prior to my current role, I was employed by Uber from January 2014 through October 2018. I was first employed as the Operations and Logistics Manager in Los Angeles from January 2014 through mid-2014, and the Senior Operations and Logistics Manager in Los Angeles from mid-2014 through December 2014. In December 2014, I moved to San Francisco to help work on the Company's insurance team. In May 2017, I became Head of International Vehicle Solutions. Then, starting in November 2017, I was employed as Head of Business Development for

    UberHealth and I remained in that role until I left the company in October 2018. I returned to Uber in my current role in November 2019.

3. As a result of my positions with Uber, I have knowledge of Uber's operations and business model, including its relationship with its subsidiaries providing services related to Uber's operations. I am familiar with Uber's record-keeping procedures and requirements. I have access to Uber's business records regarding drivers, the agreements they have with Uber, and the trips they made using Uber's software applications and I have accessed those records in the ordinary course of business.

4. Uber is a software company that develops proprietary software to create digital marketplaces that are operated through app-based platforms.

5. One of Uber's most widely known marketplaces is the Rides marketplace, which matches individuals in need of local transportation ("riders") with independent transportation providers ("drivers"), who almost always operate locally near their homes.

6. To access the Rides marketplace, riders download Uber's Rider App, while drivers willing to provide transportation services download Uber's Driver App. The software in the apps enables riders and drivers to connect based on their location. Using Uber's Rider App, riders can connect with available, non-federally regulated drivers nearby who offer a variety of transportation options within their local communities. Uber's Apps are primarily used to facilitate transportation for short-distance trips within one of the 175 cities across the United States where Uber is available. Drivers can license Uber's

Driver App by entering a platform access agreement (formerly referred to as a license agreement or a technology services agreement). Uber does not pay drivers for the rides they give to riders; riders pay drivers for the transportation services they request.

7. In my current role, I have personal knowledge of the process drivers must complete to sign up to use Uber's Driver App and the various documents to which they must assent in order to use Uber's Driver App. I also have access to Uber's business records reflecting the identity of drivers who use Uber's Driver App and the dates and times that drivers accept their applicable agreements. These records are maintained in the regular course of Uber's business, are records of regularly conducted activity, and are updated automatically as drivers agree to these documents. At the time a driver agrees to one of these documents through Uber's Driver App, an electronic receipt is generated showing that he or she agreed to the document. The receipt includes a date and time stamp establishing when the driver accepted the agreement.

8. In order to enter into the applicable agreement and gain access to the Rides marketplace, a driver must first download and log into Uber's Driver App using a unique username (the driver's email address) and password selected by the driver to create a driver account. The driver personally selects the unique username and password at the time they sign up to use Uber's Driver App, and the driver's account can only be accessed by inputting that unique username and password. Also, the driver can use the reset password feature within Uber's Driver App. To reset the password, the driver would be required to input the

    email address associated with their account, and a link to reset their password would be sent to the driver's email address.

9. Drivers who use Uber's Driver App in New York State to provide peer-to-peer ("p2p") (also referred to as "rideshare") transportation services outside of New York City enter into an agreement with Rasier-NY, LLC ("Rasier"), a wholly owned subsidiary of Uber.

10. Since December 2015, drivers who use Uber's Driver App to provide for-hire transportation services within New York City enter into an agreement with Uber USA, LLC, a wholly owned subsidiary of Uber.  Prior to December 2015, such drivers would enter into other wholly-owned subsidiaries of Uber, including Uber Logistik LLC, a former subsidiary of Uber, which has since been dissolved.

11. Any p2p or for-hire driver who wishes to access the Rides marketplace to provide transportation services since January 6, 2020 must enter into the "Uber Platform Access Agreement" with Uber, or one of its affiliated entities (the "January 2020 PAA").

12. Drivers are given the opportunity to enter into the applicable agreement(s) by clicking a hyperlink presented on the screen within Uber's Driver App.  Drivers can also view the agreement(s) from a web browser via computer and are able to print and review.  At the top of this screen, Uber's Driver App states the following: "Please review and agree to the documents below." Clicking the link opens the applicable agreement, which can be reviewed from beginning to end on the screen by scrolling through. Drivers are free to spend as much time as

they wish reviewing the applicable agreement on their smartphone. To advance past the screen that contains the link to the document, the driver has to click "YES, I AGREE" to the applicable agreement. After clicking "YES I AGREE," the driver is prompted to confirm acceptance a second time. On the second screen, Uber's Driver App states the following: "PLEASE CONFIRM THAT YOU HAVE REVIEWED ALL THE DOCUMENTS AND AGREE TO ALL THE NEW CONTRACTS." Attached hereto as **Exhibits A and B** respectively are examples of the "YES, I AGREE" screenshot and the screenshot asking to confirm acceptance a second time.

13. After clicking "YES, I AGREE" a second time, drivers are able to access Uber's Driver App. Drivers can view the agreement, among other ways, online through http://partners.uber.com.

14. Based on my review of Uber's business records, Plaintiff Sancak Davarci, first signed up to use Uber's Driver App on or about December 5, 2015 by entering into the November 10, 2014 Uber Logistik LLC Transportation Company Agreement.

15. For the first three years as a driver, Davarci used Uber's Driver App to generate leads for potential riders in New York City, which activity is regulated by the New York City Taxi and Limousine Commission.

16. On July 16, 2016, following a restructuring of certain Uber subsidiaries, and in order to continue using Uber's Driver App to provide for-hire transportation services within New York City, Davarci entered into the December 10, 2015 Uber USA, LLC Technology Services Agreement.

17. On July 12, 2017, Davarci entered into the June 17, 2017 Rasier-NY, LLC Technology Services Agreement, enabling him also to provide p2p transportation services to riders in New York State, outside of New York City. This activity is regulated as a New York State Transportation Network Company service. NY Veh. & Tr. Law § 1691, *et seq*. A true and correct copy of the June 17, 2017 Rasier Technology Services Agreement accepted by Davarci is attached hereto as **Exhibit C.**

18. On January 8, 2020, Davarci accepted the January 2020 PAA, through Uber's Driver App, in order to continue to use the Rides marketplace to generate leads. A true and correct copy of the January 2020 PAA accepted by Davarci is attached hereto as **Exhibit D.**

19. A true and correct copy of the electronic receipts received by Uber following Davarci's acceptance of various agreements with Uber, including the January 2020 PAA, maintained in the regular course of Uber's business is attached hereto as **Exhibit E**. These receipts only could have been generated by someone using Davarci's unique username and password and hitting "YES, I AGREE" twice (the same process described above) when prompted by Uber's Driver App. The date and time (UTC) shown on the receipt indicated when Davarci clicked "YES, I AGREE."

20. Based on my review of Uber's business records, Plaintiff Joseph Chambers, first signed up to use Uber's Driver App on or about July 18, 2017 by entering into the June 17, 2017 Rasier Technology Services Agreement. A true and correct

copy of the June 17, 2017 Rasier Technology Services Agreement accepted by Chambers is attached hereto as **Exhibit C.**

21. On January 9, 2020, Chambers accepted the January 2020 PAA, through Uber's Driver App, in order to continue to use the Rides marketplace to generate leads. A true and correct copy of the January 2020 PAA accepted by Chambers is attached hereto as **Exhibit F.**

22. A true and correct copy of the electronic receipts received by Uber following Chambers's acceptance of various agreements with Uber, including the January 2020 PAA, maintained in the regular course of Uber's business is attached hereto as **Exhibit G**. These receipts only could have been generated by someone using Chambers's unique username and password and hitting "YES, I AGREE" twice (the same process described above) when prompted by Uber's Driver App. The date and time (UTC) shown on the receipt indicated when Chambers clicked "YES, I AGREE."

23. The January 2020 PAA contains an Arbitration Provision. After accepting the PAA, a driver has the opportunity to opt out of the Arbitration Provision if they so desire in the manner described by the Arbitration Provision. *See* **Exhibit D** § 14.8; **Exhibit F** § 13.8. I have access to Uber's business records reflecting the names of those individuals who have elected to opt out of a particular Arbitration Provision. These opt-out records are maintained in an electronic file in the regular course of Uber's business, and are records of Uber's regularly conducted activity of recording those individuals who have opted out of the Arbitration Provision. Based on my review of these records, neither Davarci nor

   Chambers opted out of the Arbitration Provision contained in the January 2020 PAA.

24. Based on my review of these records, Uber's business records reflect that thousands of drivers did, in fact, write to Uber indicating their intent to opt out of one or more of the Arbitration Provisions contained in the various agreements in place between Uber and those who use the Rides marketplace.

25. On December 16, 2019, before he signed the 2020 PAA on January 8, 2020, Davarci emailed Uber a notice expressing his intent to opt out of "the arbitration provision in the Technology Services Agreement updated November 25, 2019." A true and correct copy of that email is attached hereto as **Exhibit H**.

26. I can confirm following a review of the records that Davarci never signed the November 25, 2019 Rasier Technology Services Agreement. A true and correct copy of the November 25, 2019 Rasier Technology Services Agreement, which Davarci did *not* sign, is attached hereto as **Exhibit I**.

I declare under the penalty of perjury under the laws of the United States and California that the foregoing is true and correct.

Executed this 10 day of December, 2020.

*brad rosenthal*
_____
BRAD ROSENTHAL