UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SANCAK DAVARCI and JOSEPH CHAMBERS, *individually and on behalf of all others similarly situated*,

        Plaintiffs,

    v.

UBER TECHNOLOGIES, INC,

        Defendant.

**Civil Action No.: 20-CV-9224 (VEC)**

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE PLAINTIFFS' CLASS ALLEGATIONS AND STAY THE ACTION

Andrew M. Spurchise
Sean A. Malley
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022

*Attorneys for Defendant*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................................1

II. ARGUMENT .............................................................................................................................1

    A. Plaintiffs Are Not Within A Class Of Transportation Workers Exempted From The FAA ..........................................................................................................1

        1. *Plaintiffs are not "engaged in interstate commerce" under Section 1 of the FAA.* ..............................................................................................2

        2. *Plaintiffs make no factual showing that they perform "work" for Uber* ...7

    B. New York Law Also Compels The Arbitration Of Plaintiffs' Claims...................8

        1. *New York law does not prohibit class-action waivers* ...............................9

        2. *New York law does not prohibit the arbitration of Plaintiffs' claims* ......10

III. CONCLUSION .......................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*52 Flavors, Inc. v. Baker & Confectionery Salesclerks Union*,
    362 N.Y.S.2d 166 (1st Dep't 1974) .................................................................................. 10

*Aimcee Wholesale Corp. v. Tomar Prods., Inc.*,
    21 N.Y.2d 621 (1981) ....................................................................................................... 10

*Baltimore & Ohio Southwestern Railroad Co. v. Burtch*,
    263 U.S. 540 (1924) ............................................................................................................ 4

*Capriole v. Uber Techs., Inc.*,
    460 F. Supp. 3d 919 (N.D. Cal. 2020) ........................................................................ 2, 3, 4

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ...................................................................................................... 2, 3, 6

*Cunningham v, Lyft, Inc.*,
    450 F. Supp. 3d 37 (D. Mass. 2020) .................................................................................. 6, 7

*Diaz v. Michigan Logistics Inc.*,
    167 F. Supp. 3d 375 (E.D.N.Y. 2016) .................................................................................. 8

*Dynamex Operations West, Inc. v. Superior Court*,
    4 Cal. 5th 903 (2018) ........................................................................................................... 8

*Erving v. Virginia Squires Basketball Club*,
    468 F.2d 1064 (2d Cir. 1972) ........................................................................................... 3, 6

*Fletcher v. Kidder, Peabody & Co.*,
    81 N.Y.2d 623 (1993) ........................................................................................................ 10

*Gold v. N.Y. Life Ins. Co.*,
    153 A.D.3d 216 (1st Dep't 2017) ........................................................................................ 9

*Gold v. N.Y. Life Ins. Co.*,
    32 N.Y.3d 1009 (2018) ........................................................................................................ 9

*Gray v. Uber Techs., Inc.*,
    2019 WL 1785094 (M.D. Fla. Apr. 10, 2019) .................................................................... 2

*Grice v. United States District Court*,
    974 F.3d 950 (9th Cir. 2020) ............................................................................................... 2

# TABLE OF AUTHORITIES (CONTINUED)

Page(s)

**Cases**

*Heller v. Rasier, LLC*,
   2020 WL 413243 (C.D. Cal. Jan. 7, 2020) .......................................................................... 2, 6

*Kowalewski v. Samandarov*,
   590 F. Supp. 2d 477 (S.D.N.Y. 2008) ................................................................................... 6, 7

*Lenz v. Yellow Transportation, Inc.*,
   431 F.3d 348 (8th Cir. 2005) .................................................................................................. 6, 7

*Lewis v. Epic Sys. Corp.*,
   823 F.3d 1147 (7th Cir. 2016), *rev'd sub nom.*, *Epic Sys. Corp. v. Lewis*, 138 S.
   Ct. 1612 (2018) .......................................................................................................................... 9

*Michel v. Parts Auth., Inc.*,
   2016 WL 5372797 (E.D.N.Y. Sept. 26, 2016) ......................................................................... 10

*U.S. ex rel. Mikes v. Straus*,
   897 F. Supp. 805 (S.D.N.Y. 1995) ........................................................................................... 10

*O'Connor v. Uber Techs., Inc.*,
   82 F. Supp. 3d 1133 (N.D. Cal. 2015) ....................................................................................... 8

*People v. Uber Techs, Inc.*,
   56 Cal. App. 266 (Cal App. Ct. 2020) ....................................................................................... 8

*Philadelphia & Reading Railroad Co. v. Hancock*,
   253 U.S. 284 (1920) ................................................................................................................... 4

*Rittmann v. Amazon.com, Inc.*,
   971 F.3d 904 (9th Cir. 2020) ..................................................................................................... 4

*Rogers v. Lyft, Inc.*,
   452 F. Supp. 3d 904 (N.D. Cal. 2020) .......................................................................... 2, 3, 5, 8

*Scaccia v. Uber Techs., Inc.*,
   2019 WL 2476811 (S.D. Ohio June 13, 2019) .......................................................................... 2

*Singh v. Uber Technologies, Inc.*,
   939 F.3d 210 (3d Cir. 2019) ....................................................................................................... 6

*Tyler v. Uber Techs., Inc.*,
   2020 WL 5569948 (D.D.C. Sept. 17, 2020) .............................................................................. 6

# TABLE OF AUTHORITIES (CONTINUED)

Page(s)

**Cases**

*United States v. Yellow Cab Co.*,
    332 U.S. 218 (1947) .................................................................................................... 4, 5, 6

*Waithaka v. Amazon.com, Inc.*,
    966 F.3d 10 (1st Cir. 2020) ................................................................................................ 4

*Wallace v. Grubhub Holdings, Inc.*,
    970 F.3d 798 (7th Cir. 2020).............................................................................................. 2

*Wertheim & Co. v. Halpert*,
    48 N.Y.2d 681 (1979) ...................................................................................................... 10

*Winston Franchise Corp. v. Williams*,
    1992 WL 7843 (S.D.N.Y. Jan. 10, 1992)........................................................................... 7

*Zambrano v. Strategic Delivery Sols., LLC*,
    2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016)................................................................. 10

**Statutes**

9 U.S.C. § 1 ................................................................................................................................... 1

National Labor Relations Act........................................................................................................ 9

New York Labor Law .................................................................................................................. 10

State Labor Relations Law ............................................................................................................ 9

**Other Authorities**

CPLR § 7515 ................................................................................................................................. 8

CPLR § 7515(b)(iii) ...................................................................................................................... 9

## I. PRELIMINARY STATEMENT

Plaintiffs Sancak Davarci and Joseph Chambers (collectively, "Plaintiffs") do not contest that they agreed to the arbitration provision in the 2020 PAA,[1] that it covers this dispute or that it is otherwise enforceable.[2] Instead, Plaintiffs argue that they fall within the FAA's narrow transportation-worker exemption, 9 U.S.C. § 1, and that in the absence of the FAA, New York law would prohibit arbitration of Plaintiffs' claims. These arguments fail.

First, in arguing that they fall within the FAA's transportation worker exemption, Plaintiffs ignore Supreme Court precedent, and ask this Court to embrace factually inapplicable and legally inapposite authority that no court within the Second Circuit has adopted. Plaintiffs do not dispute Uber's evidence demonstrating that the vast majority of all trips completed by drivers are local in nature, and rarely cross state lines. The courts that have addressed these questions based on similar evidence have decided overwhelmingly that drivers using the Uber Driver App are not workers "engaged . . . interstate commerce" within the meaning of Section 1 of the FAA. There is no reason for a different result here.

Second, as to Plaintiffs' argument that absent application of the FAA, New York law would not permit the arbitration of their claims, New York law favors arbitration, and there is no exception for private causes of action under the FLSA or the NYLL. Uber's motion should be granted.

## II. ARGUMENT

### A. Plaintiffs Are Not Within A Class Of Transportation Workers Exempted From The FAA

Section 1 of the FAA contains a narrow exclusion for "contracts of employment of seamen,

---

[1] Unless otherwise noted, acronyms and capitalized terms have the same meaning ascribed to them in Uber's opening memorandum of law (ECF No. 14).
[2] Plaintiff Davarci concedes he accepted the 2020 PAA *after* attempting to opt out of an earlier agreement with Uber that he never executed. Thus, the arbitration provision in the 2020 PAA is binding and operative with respect to his claims here.

railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Plaintiffs, "as the parties resisting arbitration, bear the burden of proving that this exemption applies." *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 913 (N.D. Cal. 2020), but they have not—and cannot—carry that burden here.  There is no dispute Plaintiffs are neither "seamen" nor "railroad employees." Plaintiffs have not met their burden of proving that they are "engaged … in interstate commerce" in a manner "akin" to seamen and railroad employees, or that they perform work pursuant to an employment contract within the meaning of Section 1. *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020) (holding that Grubhub delivery drivers are not exempt under FAA Section 1 because they are not engaged "in the channels of interstate commerce" in a manner "akin" to seamen and railroad employees).

      1.    *Plaintiffs are not "engaged in interstate commerce" under Section 1 of the FAA.*

Every court to make a final adjudication whether drivers who use the Uber Driver App fall within this narrow exemption has concluded that they do not. *Grice v. United States District Court*, 974 F.3d 950 (9th Cir. 2020) (denying petition for mandamus and affirming that drivers who use the Uber Driver App are not exempt under Section 1 of the FAA); *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 932 (N.D. Cal. 2020) (citing statistics produced by Uber and holding that interstate rides provided by drivers using the Uber Driver App are not only "incidental" to interstate commerce but also "rare"); *Heller v. Rasier, LLC*, 2020 WL 413243, at *9 (C.D. Cal. Jan. 7, 2020); *Scaccia v. Uber Techs., Inc.*, 2019 WL 2476811, at *5 (S.D. Ohio June 13, 2019); *Gray v. Uber Techs., Inc.*, 2019 WL 1785094, at *2 (M.D. Fla. Apr. 10, 2019).

The Court should follow this overwhelming authority here as well.  As the Supreme Court has explained, although "[t]he phrase '*affecting commerce*' [in Section 2 of the FAA] indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause," the "phrase '*engaged in commerce*' [in Section 1 of the FAA is] understood to have a more limited reach." *Circuit*

2

*City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (emphasis added). Indeed, the Second Circuit has long held to a restrictive view of the Section 1 exemption. *See Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972) (holding that the residuary exemption applied only to transportation workers whose work was "closely related to the actual movement of goods in interstate commerce").

"[T]he question posed by the exemption is 'not whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce.'"[3] *Rogers*, 452 F. Supp. 3d at 915.  Plaintiffs suggest that Uber's core business revolves around the transportation of people in interstate commerce because just 2.5% of the rides offered by drivers who use the Uber Driver App cross state lines.  Not only is this number miniscule on its face, but the context in which Plaintiff offers it obscures the true nature of these interstate rides. These rare interstate trips are short, local trips, covering an average distance of 13.5 miles; intrastate trips are even shorter, averaging 6.1 miles per trip. (Contreras Decl., ¶ 4.) That these short, local trips happen to occur in multistate metropolitan areas does not alter their nature. *See Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 916 (N.D. Cal. 2020) (holding that drivers using the Lyft app are not exempt under Section 1, and stating that "[i]nterstate trips that occur by happenstance of geography do not alter the intrastate transportation function performed by the class of workers"); *Capriole*, 460 F. Supp. 3d at 932 ("Uber drivers do not perform an integral role in a chain of interstate transportation").

Simply put, drivers who use the Uber Driver App do not play an inextricable part of cross-border transportation. The decisions cited by Plaintiffs that have held wholly intrastate delivery

---

[3] For this reason, Plaintiffs' personal estimates of the percentage of their own trips that began or ended at airports and bus and train stations (Opp., p. 9) have no bearing on the application of the Section 1 exemption to Plaintiffs as a class of workers.  Those estimates only confirm the local nature of Plaintiffs' work (*see, e.g.,* Chambers Decl. ¶¶ 7-8 (estimating that his trips crossed into Canada "occasionally," and that only 2 percent began or ended at an airport, bus station, or train station); Davarci Decl. ¶¶ 7-8 (estimating that 25 percent of his trips crossed state lines, and 30 percent involved an airport, bus station, or train station).)

3

drivers to fall within the Section 1 exemption only serve to highlight the distinction between those classes of workers and the class of workers at issue here. In those cases, the intrastate transportation was directed and coordinated as part of an unbroken chain of cross-border transportation of goods. *See, e.g., Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020) ("The interstate transactions between Amazon and the customer do not conclude until the packages reach their intended destinations, and thus AmFlex drivers are engaged in the movement of interstate commerce."); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020) ("To 'ensure that millions of packages reach their final destination as efficiently as possible,' Amazon Logistics provides package delivery services 'through the last mile of the order.'"). The intrastate work at issue in these cases was coordinated with and closely connected to the overall interstate journey of the goods being transported—making them both indispensable elements of interstate transportation. *See Baltimore & Ohio Southwestern Railroad Co. v. Burtch*, 263 U.S. 540, 544 (1924) ("It is too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it."); *Philadelphia & Reading Railroad Co. v. Hancock*, 253 U.S. 284, 286 (1920) (first intrastate leg of interstate coal route) ("The coal was in the course of transportation to another state when the cars left the mine. There was no interruption of the movement; it always continued towards points as originally intended.")

Plaintiffs also argue that drivers who use the Uber Driver App are exempt because on occasion (15% of the time, according to Plaintiffs) they also provide rides to and from airports. This argument too fails to advance Plaintiffs' case and is contrary to on-point United States Supreme Court precedent. Regardless of the fact that a rider may begin or end a trip at an airport, the ride provided is still local, and the driver is not performing an "integral role in a chain of interstate transportation." *Capriole*, 460 F. Supp. 3d at 932; *see United States v. Yellow Cab Co.*, 332 U.S. 218 (1947) (likening taxi cab trips to and from rail stations as having an "only casual and incidental" relationship to

interstate transit). From the driver's perspective, the rider's origin and destination are irrelevant; the rider may work at the airport, she may have come off an intrastate flight, or she may be on her way to Tokyo. As the Court reasoned in *Yellow Cab*: "From the standpoints of time and continuity, the taxicab trip may be quite distinct and separate from the interstate journey. To the taxicab driver, it is just another local fare." *Yellow Cab Co.*, 332 U.S. at 232.[4]

Even if wholly intrastate trips to and from airports could, in some circumstances, satisfy the "engaged in foreign or interstate commerce" requirement, they cannot do so when they are such a *de minimis* aspect of the class's work. *See Rogers*, 452 F.Supp.3d at 916 ("It would be one thing if Lyft's focus were the service of transporting people to and from airports," similar to workers "who drive for an airport shuttle service," but Lyft is merely "in the general business of giving people rides"). This principle follows precisely the Supreme Court's reasoning in *Yellow Cab*: "a traveler intending to make an interstate rail journey begins his interstate movement when he boards the train at the station and . . . his journey ends when he disembarks at the station in the city of destination," such that "[w]hat happens prior or subsequent to that rail journey, at least in the absence of some special arrangement, is not a constituent part of the interstate movement." 332 U.S. at 231-32.

---

[4] In a footnote to their opposition, Plaintiffs point to purported marketing agreements between Uber and certain airlines in support of their arguments. Opp. at 11, n. 13. These purported arrangements do not alter the conclusion that Plaintiffs are not engaged in the "channels" of interstate commerce. The first of these arrangements cited by Plaintiff (Opp. Exhibit E) refers to services available only in India, which have no bearing whatsoever on this case. Plaintiffs also refer to a 2014 travel magazine article detailing a feature on the United Airlines app, which provides a link to open the Uber App to request a ride upon arrival at the destination airport. Plaintiffs attempt to analogize this to various travel-package deals that some courts have concluded suggest that workers transporting airport passengers are exempt from FAA Section 1. Opp. at 11, n. 13. First, Plaintiffs' evidence relies on a program offered in India and a single United Airlines promotion from 2014. This is hardly sufficient to establish that the core of Uber's business model involves transporting riders to and from airports. Regardless, unlike the cases that Plaintiffs reference in support of this argument, Plaintiffs' evidence proves that an Uber ride is a separate transaction from a passenger's flight on United. This is not evidence of an unbroken chain of interstate travel, but nothing more than a mutually beneficial marketing arrangement. For the rider who opts to jump from the United app to the Uber App, the rider may (but is not required to) procure a ride through a separate transaction on Uber (if vehicles are available) as the result of an independent decision to use the Uber App rather than a cab, a friend, a limo or any number of alternative means of transportation to or from the airport. This marketing arrangement does nothing to alter the core service provided by Plaintiffs: local, not interstate, travel.

As an alternative basis for finding that the exemption does not apply, and as explained in Section III.B.3 of Uber's opening brief, the FAA Section 1 exemption does not apply because Plaintiffs are not involved in the movement of *goods*.

In *Circuit City*, the Supreme Court confirmed the view endorsed by the majority of the Courts of Appeals at the time, which limited the residuary exemption to "transportation workers . . . actually engaged in the movement of goods in interstate commerce." *Id.* at 112; *see Erving*, 468 F.2d at 1069 (exemption applies to classes of workers "closely related to the actual movement of goods in interstate commerce"); *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 481 (S.D.N.Y. 2008).

In support of their argument that the transport of *people* satisfies the transportation worker exemption, Plaintiffs rely primarily on the decision in *Singh v. Uber Technologies, Inc.*, 939 F.3d 210 (3d Cir. 2019). To date, no court within the Second Circuit has followed the minority position promulgated by the Third Circuit in *Singh*, and many other district courts throughout the country have explicitly declined to follow *Singh*. *See, e.g.*, *Heller v. Rasier, LLC*, 2020 WL 413243, at *8 (C.D. Cal. Jan. 7, 2020) (declining to follow *Singh* and stating that "this Court is not convinced that the railroad and shipping industries were not considered by Congress as primarily involved in the transportation of goods."); *Tyler v. Uber Techs., Inc.*, 2020 WL 5569948, at *5 (D.D.C. Sept. 17, 2020) (declining to follow *Singh*, noting that the majority of circuit courts limit the exemption to "the transportation of *goods* in commerce"). Moreover, *Singh* did not find that drivers were categorically exempt, but rather remanded the matter to the district court to determine whether the exemption applied. *See Heller*, 2020 WL 413243, at *8.

The decision of the Massachusetts district court in *Cunningham v, Lyft, Inc.*, 450 F. Supp. 3d 37 (D. Mass. 2020),[5] upon which Plaintiff relies, is inconsistent with Second Circuit precedent.

---

[5] Among other reasons, *Cunningham* should be ignored because it did not even address should also be ignored because it did not even address *Yellow Cab*, on-point Supreme Court precedent.

6

Critically, *Cunningham* reached its decision by applying the eight-factor test promulgated in *Lenz v. Yellow Transportation, Inc.*, 431 F.3d 348 (8th Cir. 2005), which has not been adopted by the Second Circuit. In fact, the *Lenz* test was specifically rejected in *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477 (S.D.N.Y. 2008):

> The Court acknowledges, but declines to explicitly follow, the analysis articulated by the Eighth Circuit in *Lenz v. Yellow Transp., Inc.,* 431 F.3d 348 (8th Cir. 2005), setting forth eight "non-exclusive" factors to be considered "in determining whether an employee is so closely related to interstate commerce that he or she fits within the § 1 exemption of the FAA." *Id.* at 352–53. While *Lenz* informs the Court's analysis, the *Lenz* factors were formulated in a specific context— determining whether a worker one step removed from the actual physical delivery of goods fell under the residuary exemption—not at issue in the instant case.

*Id.* at 482 n.3. As in *Kowalewski*, this case does not involve workers one-step removed from the physical delivery of goods. Personal passenger-transportation providers are fundamentally different: they have no role in the free flow of goods at all. *Lenz* and, by extension, *Cunningham*, are therefore inapposite.

### 2. *Plaintiffs make no factual showing that they perform "work" for Uber*

Plaintiffs make no factual showing to rebut Uber's argument that the 2020 PAA is not a contract of employment. *Compare* Opening Br. at 13, *with* Opp. at 4-5. Specifically, Plaintiffs do not dispute that they "receive and fulfill on-demand requests for transportation services from riders, at the time and place of Plaintiffs' choosing, and only if they do so at all." Opening Br. at 13. Moreover, Uber does not pay Plaintiffs to provide rides to passengers or to perform any other work. (Rosenthal Decl. ¶ 6.) Rather, the 2020 PAA provides Plaintiffs with a license to use the Uber Driver App to seek, receive and fulfill on-demand requests for transportation services from riders, at the time and place of Plaintiffs' choosing. *See Winston Franchise Corp. v. Williams*, 1992 WL 7843, *7 (S.D.N.Y. Jan. 10, 1992) ("The Licensing Agreement is not an employment contract"; rather, it is an agreement

Williams entered into to gain access to the "Roth Young system benefits" that would enable Williams to operate his own "employment agency business").

In opposition, Plaintiffs try to piggyback off of four California decisions interpreting California law. *See Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 911 (N.D. Cal. 2020) (applying "ABC test" from *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903, 959–61 (2018); *People v. Uber Techs, Inc.*, 56 Cal. App. 266 (Cal App. Ct. 2020) (same); *O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133 (N.D. Cal. 2015) (applying California law).

Whether drivers provide a service to Uber or are "employees" for purposes of California law is not relevant to whether Plaintiffs have "contracts of employment" with Uber that fall within the transportation worker exemption under federal law. Indeed, only one of these California cases cited by Plaintiffs, *Rogers v. Lyft*, concerned the transportation worker exemption to the FAA, and it held that the plaintiffs were *not* exempt under Section 1 because they were not engaged in interstate commerce, despite occasionally transporting people to and from airports. 452 F. Supp. 3d at 911.

### B.   New York Law Also Compels The Arbitration Of Plaintiffs' Claims

Even if Plaintiffs were in fact within the FAA's transportation worker exemption (and they are not), they would still be compelled to arbitrate their claims under New York law. Unlike the FAA, "New York arbitration law does not exempt transportation workers from arbitration. . . . [t]hus, even assuming that the FAA does not apply, Plaintiffs are compelled to arbitrate their claims." *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 381 (E.D.N.Y. 2016) (collecting cases). Notwithstanding New York's strong policy in favor of arbitration, Plaintiffs argue that New York law invalidates the arbitration provision's class waiver and prohibits mandatory arbitration of their claims.[6] *See* Opp. at 15-16. Plaintiffs are wrong on each point.

---

[6] Plaintiffs also argue that, even though Plaintiffs are not bringing discrimination claims, the entire arbitration provision of the 2020 PAA is invalidated pursuant to CPLR § 7515, because the same provision that mandates the arbitration of discrimination claims also mandates the arbitration of other claims. However, Section 7515 makes clear that "the inclusion

8

### 1. *New York law does not prohibit class-action waivers*

New York law in no way prohibits class-action waivers. Plaintiff concedes that "the New York Court of Appeals has not reached this issue," but argues that "the First Department issued a decision which *suggests* that New York courts would follow these other states' conclusions and hold, under state law, that arbitration agreements containing class action waivers are not enforceable." Opp. at 17 (emphasis added). Plaintiffs misstate their supporting case. First, the First Department decision on which Plaintiffs rely, *Gold v. N.Y. Life Ins. Co.*, 153 A.D.3d 216 (1st Dep't 2017), was reversed by the Court of Appeals, *see Gold v. N.Y. Life Ins. Co.*, 32 N.Y.3d 1009 (2018). Second, the First Department's decision was based on the Seventh Circuit's holding – later overturned by the Supreme Court – that *federal law*, specifically the National Labor Relations Act ("NLRA"), prohibited class action waivers in the arbitration agreements. *See Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *rev'd sub nom.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

Plaintiffs tortuously conclude that: (1) if the FAA were not to apply, then (2) the NLRA would not be displaced, (3) the First Department's interpretation of the NLRA would apply to the New York State Labor Relations Law ("SLRA"), and (4) the SLRA would apply to invalidate the class action waiver in this case. *See* Opp. at 17-18. One fatal problem in this logical leap is that, if "NLRA precedent applies to" the SLRA, as Plaintiffs suggest, then so must the Supreme Court's reading of the NLRA. In *Epic Systems*, the Court explained:

"But [the NLRA] does not express approval or disapproval of arbitration. It does not mention class or collective action procedures. It does not even hint at a wish to displace the Arbitration Act— let alone accomplish that much clearly and manifestly, as our precedents demand." 138 S. Ct. at 1624. Following Plaintiffs' own logic, the SLRA does not invalidate class action waivers, either.

---

of such clause in a written contract shall not serve to impair the enforceability of any other provision of such contract." CPLR § 7515(b)(iii).

### 2. *New York law does not prohibit the arbitration of Plaintiffs' claims*

No New York decision or statute has ever prohibited mandatory arbitration of wage-and-hour claims. Courts in this district have consistently held that the mandatory arbitration of FLSA and NYLL claims is permissible.[7] *See, e.g.*, *Zambrano v. Strategic Delivery Sols., LLC*, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016) ("And contrary to Plaintiffs' argument, courts in this District have consistently found FLSA and NYLL claims to be arbitrable."); *Michel v. Parts Auth., Inc.*, 2016 WL 5372797, at *4 (E.D.N.Y. Sept. 26, 2016) ("District courts in this circuit have rejected this argument and required arbitration of claims under the New York Labor Law"). Plaintiffs' reference to two Court of Appeals decisions prohibiting the mandatory arbitration of antirust claims is unavailing. First, *Wertheim & Co. v. Halpert*, 48 N.Y.2d 681 (1979) was abrogated by *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623 (1993) and therefore warrants no further discussion. Second, *Aimcee Wholesale Corp. v. Tomar Prods., Inc.*, 21 N.Y.2d 621 (1981) has been discussed in the context of NYLL in just one Appellate Division case, and in that case the court assumed NYLL claims could be arbitrated, but found that "the agreement with the respondent union was invalid since the union was not a representative of a majority of the employees." *52 Flavors, Inc. v. Baker & Confectionery Salesclerks Union*, 362 N.Y.S.2d 166, 167 (1st Dep't 1974). The two federal court decisions discussing *Aimcee* in the context of NYLL claims permitted arbitration of those claims. *See Zambrano*, 2016 WL 5339552, at *9; *U.S. ex rel. Mikes v. Straus*, 897 F. Supp. 805 (S.D.N.Y. 1995).

## III. CONCLUSION

For all the foregoing reasons, and those set forth in Uber's opening memorandum of law (ECF No. 14), Uber respectfully requests that this Court compel Plaintiffs to arbitrate their claims on an individual basis, strike Plaintiffs' class allegations, and stay the action pending arbitration.

---

[7] It is important to note that while arbitration is required at this stage under the arbitration provision, Uber did not impose the arbitration provision as a mandatory condition. Plaintiffs had 30 days after accepting to review the arbitration provision and consider whether to opt-out. (Ex. D § 14.8.) Plaintiffs chose not to do so. (Rosenthal Decl. at ¶¶ 23-24.)

Date: January 25, 2021
New York, New York

/s/ Sean A. Malley
Andrew M. Spurchise
Sean A. Malley
Littler Mendelson, P.C.
900 Third Avenue 8th Floor
New York, NY 10022
212.583.2691
aspurchise@littler.com
smalley@littler.com

*Attorneys for Defendant Uber Technologies, Inc.*