

**Littler Mendelson, P.C.**
900 Third Avenue
New York, NY  10022.3298

Sean A. Malley
212.583.2691 direct
212.583.9600 main
smalley@littler.com

April 16, 2021

**VIA ECF**

Hon. Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

> **Re:** *Davarci, et al. v. Uber Technologies, Inc.,* **20-cv-9224 (VEC)**

Dear Judge Caproni:

As you are aware, we represent Defendant Uber Technologies, Inc. ("Uber") in the above-referenced matter. We write in support of Uber's pending motion to compel arbitration and to respond to Plaintiffs' April 9, 2021 letter (Docket No. 28) regarding the recent decisions in *Haider v. Lyft*, 20-cv-2997, 2021 WL 122642 (S.D.N.Y. Mar. 31, 2021) and *Saxon v. Southwest Airlines Co.*, No. 19-3226, 2021 WL 1201367 (7th Cir. Mar. 31, 2021).

*Haider* joins the minority view on whether rideshare drivers fall within the Section 1 exemption of the Federal Arbitration Act ("FAA"). It reaches the wrong conclusion on the law and is distinguishable on its facts. *Saxon*, meanwhile, provides no support to Plaintiffs and indeed reinforces the major precedents cited throughout Uber's opening and reply briefs.

In *Haider*, Judge Nathan found, "based on the factual record before [her],"[1] that drivers using Lyft were engaged in interstate commerce. In so doing, the court noted that "[n]o circuit court has decided whether rideshare drivers fall within the exemption," and that "[d]istrict courts have split" on the issue. *Haider*, 2021 WL 1226422, at *2. She nevertheless relied heavily on inapposite authority, *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020) and *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 14 (1st Cir. 2020)—rather than the weight of on-point and persuasive authority—to reach her conclusion.

As explained in Uber's Reply Brief (Docket No. 21, at pp. 3-4) and Uber's most recent letter to the Court (Docket No. 26), *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020) and *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 14 (1st Cir. 2020) found Amazon Flex drivers were exempt under Section 1 of the FAA because the service they provided was directed and coordinated by Amazon as part of an

---

[1] Judge Nathan's denial of Lyft's motion to compel arbitration was without prejudice to Lyft renewing its motion after discovery had taken place.

Hon. Valerie E. Caproni
April 16, 2021
Page 2

unbroken chain of cross-border transportation of goods, and that completing the "last-mile" of those interstate transactions was the central feature of those drivers' work. *Rittman* and *Waithaka* were incorrectly applied in *Haider* and they are certainly not applicable here, based on this record.

The *Haider* court relied on the fact that 20 percent of the lead plaintiff's total earnings were from the higher-fare interstate trips completed within the tri-state area (New York, New Jersey, and Connecticut), and that 25 percent of his earnings were from trips to or from bus, train, ferry, or airport terminals. *Haider*, 2021 WL 122642, at *1. The court was also persuaded in large part by the marketing partnerships between Lyft and various airlines, including Delta Airlines. *See id.* at *2, 4.

The record evidence here paints a very different picture.[2] For example, Plaintiff Chambers "estimated" that only two percent of the trips that he took involved transporting passengers to transportation hubs and that he "occasionally" crossed state lines. (Chambers Decl., Docket No. 20-1 at 7.) While Plaintiff Davarci "estimated" 25 percent of his trips crossed state lines and 30 percent of his trips involved transporting passengers to transportation hubs, he does not allege that the nature of the services—i.e., local rides—differed in any material way from Plaintiff Chambers. (Davarci Decl., Docket No. 20-1 at 5.) Rather, the only logical explanation for this distinction is that Plaintiffs happen to work in different geographic locations. Plaintiff Davarci lives and works in the New York City metropolitan area, which encompasses multiple states, and is home to multiple major international transportation hubs and millions of visitors each month. Plaintiff Chambers lives and works in Buffalo, a much smaller city, with fewer nearby interstate borders and fewer major transportation hubs.

Nothing in this record suggests that transporting riders across state lines or as part of a larger interstate journey is "central" to the local personal passenger-transportation service that drivers provide, as opposed to geographic "happenstance." *See Wallace v. Grubhub Holdings, Inc.,* 970 F.3d 798, 801 (7th Cir. 2020) (The issue is "whether the interstate movement of goods is a *central* part of the class members' job description.") (emphasis added); *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 916 (N.D. Cal. 2020) ("Interstate trips that occur by *happenstance* of geography do not alter the intrastate transportation function performed by the class of workers.") (emphasis added).

With respect to marketing arrangements, the most that Plaintiffs could point to in this case were unauthenticated news articles from a travel website indicating the existence of unspecified business partnerships between Uber and (a) an airline in *India*; and (b) United Airlines, *in 2014*. (*See* Def. Reply, Docket No. 21 at 5 n.4.) Even if the Court were to consider these news articles at all, there is no basis to conclude that some "special arrangement" exists between any interstate carrier and Uber that enables the beginning-to-end interstate transportation service akin to the cross-border coordination found in *Rittman* and *Waithaka*. *See United States v. Yellow Cab Co.*, 332 U.S. 218, 232-233 (1947) (absent some

---

[2] Judge Nathan placed far too much emphasis on the anecdotal percentages provided by the *Haider* plaintiffs, and improperly relied on the raw number of trips crossing state lines. The focus of inquiry is on the "class of workers" at issue, not the experiences of a particular driver. Moreover, the fact that millions of trips may cross state lines within a particular geographic area does not suggest work performed in the channels of interstate commerce, particularly where, as here, such trips only represent 2.5 percent of all trips taken. (Contreras Decl., Docket No. 16 at 2.)

Hon. Valerie E. Caproni
April 16, 2021
Page 3

"special arrangement," what happens prior to or subsequent to interstate journey is not "constituent part of the interstate movement;" thus "when local taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation"). There is no evidence that these marketing partnerships resulted in any level of integration between Uber's operations and those of any interstate carrier. Nor is there any evidence that any trips in any way connected with these marketing arrangements (if any) were "central" to Plaintiffs' services. *See Wallace, supra,* 970 F.3d at 801. The only conclusion to be drawn from this record is that any ride requested by a rider and accepted by a driver using Uber is a *separate* transaction, distinct from any interstate journey that may have preceded it, and predominately local in nature.

The Seventh Circuit's recent decision in *Saxon v. Southwest Airlines Co.* likewise offers Plaintiff no support, and indeed reinforces that Court's earlier decision in *Wallace* that in order to be exempt, a worker must be engaged in "the enterprise of moving goods across interstate lines." *Saxon*, 2021 WL 1201367 at *4 (quoting *Wallace*, 970 F.3d at 801-02). *Saxon* turned on whether cargo loaders are "transportation workers," not whether the transportation is "interstate." That ruling is irrelevant here, because Uber has not argued Plaintiffs are not transportation workers; rather, the parties contest only whether that transportation is "interstate." This question was not presented in *Saxon*. *Id.* at *3 ("[T]he parties agree that Southwest's business … is in interstate commerce within the meaning of § 1.").

Further, in *Saxon*, "a central part of [the plaintiff's] job is the loading and unloading of cargo for planes on interstate and international flights." *Id.* at *6. The Seventh Circuit distinguished its decision from the Fifth Circuit's decision in *Eastus v. ISS Facility Services, Inc.*, 960 F.3d 207 (5th Cir. 2020), which held that the plaintiff, who supervised ticketing agents, was not exempt. The *Saxon* court held that the *Eastus* plaintiff "did not personally load or unload cargo and so was at least one step removed from" Saxon's role. *Id.* In fact, it further emphasized that its holding does not mean that "others even further removed from that moment qualify too." *Id.* at *7.

Plaintiffs here are many steps removed from the plaintiffs in either *Eastus* or *Saxon*. They are not integrated in any meaningful way with the operation of interstate carriers regularly transporting people across state lines. As discussed in Uber's Reply Brief, any trips that Plaintiffs may have made across state lines or to modes of interstate travel were merely incidental to the local ride service that they provide riders. (*See* Doc. No. 21, at pp. 4-5.)

Plaintiffs also contend that *Saxon* "held" that "post-1925 cases such as *United States v. Yellow Cab Co., 332 U.S. 218 (1947)* . . . 'shed little light on what it meant to be engaged in commerce.'" (Docket No. 28.) This statement is highly misleading. *Saxon* does not so much as mention *Yellow Cab*. More importantly, the post-1925 cases referenced by the court were "FELA decisions after 1939, when Congress *loosened the 'employed in commerce' test*." 2021 WL 1201367, at *7 (emphasis added). *Yellow Cab* is not such a case.

Finally, there is an additional decision the Court should be aware of that was issued since Uber's last correspondence. Judge Ketanji Brown Jackson of the US District Court for the District of Columbia issued

Hon. Valerie E. Caproni
April 16, 2021
Page 4

an order on March 31, 2021 granting Lyft's motion to compel arbitration. *See Osvatics v. Lyft,* No. 1:20-cv-01426, docket no. 47 (D.D.C. Mar. 31, 2021). Judge Jackson has yet to enter a full opinion, however, the plaintiffs opposed arbitration in that case based on the argument that drivers contracting with Lyft were exempt from Section 1.

Uber's motion should be granted. We thank the Court for its attention to this matter.

Sincerely,

*/s/ Sean A. Malley*

Sean A. Malley