# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANCAK DAVARCI and JOSEPH CHAMBERS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant | CIV. A. NO. 20-CV-9224-VEC |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S APRIL 16, 2021 LETTER**

In connection with the Court's consideration of Plaintiffs' Opposition to Defendant Uber Technologies, Inc.'s Motion to Compel Arbitration, Plaintiffs write in response to Defendant Uber's April 16, 2021 letter, specifically its reference to the recently decided case, Osvatics v. Lyft, Inc., 2021 U.S. Dist. LEXIS 77559 (D.D.C. April 22, 2021).

In Osvatics, the district court reached two key holdings: "(1) that the section 1 exemption is not limited to transportation workers who transport goods rather than people, and (2) that the relevant 'class of workers' must be assessed at a nationwide level rather than a specific geographic area." Id. at *22. Both of these holdings support the position that Plaintiffs advanced in their Opposition. First, the overwhelming weight of authority holds that the Section 1 exemption includes workers who transport only passengers. See Opposition, at 13-15. Second, it is proper to examine the nationwide character of rideshare drivers' work. Annually, rideshares drivers conduct tens—if not hundreds—of millions of interstate trips in the United States, and many more trips

1

transporting passengers in the flow of interstate commerce to and from airports, bus terminals, and train stations. See Opposition, at 6, 8; see also Islam v. Lyft, 2021 U.S. Dist. LEXIS 43839, at *23 (S.D.N.Y. March 9, 2021) (applying the "nationwide class" approach to rideshare drivers and finding them to be exempt under Section 1).

However, the Osvatics court found that Lyft drivers do not fall within the FAA Section 1 exemption, based on a misinterpretation of Waithaka and Rittmann; as well as a starkly different record than here. Id. at *36-37. First, the Osvatics court misconstrues the holding in Waithaka and Rittmann that, when Congress passed the FAA, "workers moving goods or people destined for, or coming from, other states—even if the workers were responsible only for an intrastate leg of that interstate journey—were understood to be 'engaged in interstate commerce'". Waithaka v. Amazon.com, Inc., 966 F.3d 10, 22 (1st Cir. 2020); Rittmann v. Amazon.com, Inc., 971 F.3d 904, 916 (9th Cir. 2020). Evidently, the phrase "engaged in interstate commerce" only requires that rideshare drivers transport passengers on the first or last leg of interstate journeys—**not** that rideshare companies conduct the entirety of the passengers' interstate journeys, as the Osvatics court wrongly concluded. 2021 U.S. Dist. LEXIS 43839, at *41-42.

Moreover, the Osvatics court's conclusion is based on a far different record than the one at issue here. For example, the court noted that "there is no evidence that Lyft has a 'contractual or other arrangement' with airlines or railways for Lyft drivers to transport passengers who have taken trips with those companies." Id. at *38. Here, by contrast, Plaintiffs introduced evidence of Uber's partnerships with airlines and airports to facilitate interstate travel. See Opposition, at 8 n.10. Indeed, as set forth in Plaintiffs' Opposition, Uber's partnerships with interstate commerce hubs to facilitate passengers'

2

interstate trips crucially differentiate Uber drivers from taxi drivers, who do not engage in such partnerships. Id. at 11 n.13; see also 2021 U.S. Dist. LEXIS 77559, at *37.

Further, the Osvatics court found that Lyft drivers' interstate trips, and trips within the flow of interstate commerce, are "'incidental' to their local transportation function . . ." Id. at *37, 41. However, this is not the case for the Uber drivers, for whom airport trips alone constitute 15% of all bookings—and far more when combined with trips to bus stations and train terminals, as well as interstate trips. See Opposition, at 8. Thus, Uber drivers' trips that are interstate and within the flow of interstate commerce are not "occasional" or "incidental"—those trips constitute a significant portion of their work. As this court recognized in both Haider and Islam, the sheer number of trips that rideshare drivers make interstate and within the flow of interstate commerce means these drivers are "engaged in" interstate commerce.[1]

| | |
|---|---|
| Dated: April 26, 2021 | Respectfully submitted, |
| | SANCAK DAVARCI AND JOSEPH CHAMBERS, individually and on behalf of all others similarly situated, |
| | By their attorneys, |
| | /s/ Shannon Liss-Riordan<br>Shannon Liss-Riordan, NY Bar No. 2971927<br>Anne Kramer, *pro hac vice* anticipated<br>LICHTEN & LISS-RIORDAN, P.C. |

---

[1] Haider v. Lyft, 2021 U.S. Dist. LEXIS 62690 *9 (S.D.N.Y. March 31, 2021) ("To begin with, the sheer number of interstate trips rideshare drivers make places them 'within the flow of interstate commerce.'"); Islam, 2021 U.S. Dist. LEXIS 43839 *27 ("First, the mere fact that only two to three percent of Lyft and Uber rides cross state lines does not render those trips 'incidental.' Ridesharing platforms provide hundreds of millions of rides in the United States each year.").

3

>729 Boylston Street, Suite 2000
>Boston, MA 02116
>(617) 994-5800
>Email:  sliss@llrlaw.com, akramer@llrlaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on April 26, 2021, she filed and served the foregoing document via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's CM/ECF system.

>*/s/ Shannon Liss-Riordan*
>Shannon Liss-Riordan